15798

HOWELL v. GIBSON

(37 S. E. (2d), 271)

*Messrs. Williams & Henry,* of Greenville, Counsel for Appellant,

*Messrs. Wyche, Burgess & Wofford,* of Greenville, Counsel for Respondent,

February 8, 1946.

*Per Curiam:* The Appeal in this case involves questions raised by exceptions to two orders passed by the Hon. J. Robert Martin, Judge of the Thirteenth Circuit.

The first fourteen exceptions relate to the decree dated July 31, 1945, and are overruled, as the order appealed from meets with the approval of this Court and will be reported as the opinion thereof (omitting the description of the property).

The last exception is to the order dated August 10, 1945, requiring Appellant to give Appeal bond to both the Mortgagee and the purchaser.

Sec. 788, Vol. 1, Code of 1942 provides for the giving of two types of bonds, one where the judgment directs a sale or delivery of the property and the other where a sale is

directed to satisfy a Mortgage or other lien, both conditions being present in instant case.

The property was purchased by G. C. Gibson, the Respondent herein. The decree orders delivery to him and he is entitled, during possession of the property by Appellant, to protection against his committing or suffering to be committed and waste thereon, and for the payment of a reasonable rental.

Should Appellant succeed in setting aside the sale and having a new one ordered, the situation might conceivably arise where the property would be sold for less than the judgment debt and cost to the jury of the Mortgagee.

Appellant argues that he is being subjected to a possible deficiency judgment thereunder but a study of the decree shows that it provides that Plaintiff have judgment against the mortgaged premises for the sum of $10,610.32 with interest from April 5, 1945, which includes principal, interest and attorneys fees as found by the Master, a personal or deficiency judgment having been waived.

This exception is therefore overruled and the judgment appealed from affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES STUKES, TAYLOR and OXNER concur.

MR. ASSOCIATE JUSTICE FISHBURNE did not participate.

ORDER OF JUDGE MARTIN

Dated July 31, 1945

A verified petition was filed by J. B. Howell against G. C. Gibson in the main cause herein, asking for a resale of the property sold in the main cause and for an order restraining the Master for Greenville County from executing a deed to the respondent. Upon said verified petition the Court issued a rule to show cause and temporary restraining order. Respondent filed a demurrer to the petition and rule to show cause upon the ground that the petition does not state facts sufficient to constitute a cause of action or grounds for the relief prayed for. Respondent also filed a verified return and answer in which it was prayed that the petition and rule to

show cause be dismissed and that the Master be authorized and directed to convey the property to him in compliance with his bid. The issues thus raised were heard by me on affidavits filed by the parties interested and the record in the main cause. Upon the issues the Court finds the following facts and conclusions of law:

On November 1, 1924, J. B. Howell executed and delivered to Vance Edwards a note and mortgage for $3,500.00, payable one year after date, said mortgage covering the property forming the subject-matter of this proceeding. Florence E. Howell, wife of said petitioner renounced her dower on this mortgage.

On February 27, 1945, Vance Edwards, through his attorneys, Love and Thornton, brought a foreclosure proceeding against petitioner, the defendant therein, seeking judgment against the mortgaged premises for the full amount due thereon and for foreclosure and sale of the mortgaged premises and the barring of any equity or redemption on the part of the mortgagor or any person claiming through him. Petitioner filed no answer or other pleading to the foreclosure suit, but consented to the order of reference through D. B. Leatherwood, Attorney, and said attorney appeared for him at the reference held on April 5, 1945.

On April 18, 1945, a decree was signed by the Court confirming the Master's Report, dated April 5, 1945, and ordering judgment in favor of the plaintiff against the mortgaged premises for the sum of $10,610.32, with interest from April 5, 1945, said amount including principal, interest from January 1, 1930, and attorney's fees, a personal or deficiency judgment having been waived. Said decree ordered foreclosure and sale of the mortgaged property referred to in the complaint, said sale to be held on sales day in May, 1945, or upon some subsequent sales day thereafter, and required the successful bidder other than the plaintiff to deposit with the Master five per cent. of his bid as evidence of good faith in the bidding. Upon this decree the property was duly advertised by the Master and at the public sale held in the

Court House on sales day in May, to wit: May 7, 1945, the respondent herein was the highest bidder therefor at $9,100.00. He paid the required deposit of five per cent. and was restrained by the Court in this proceeding from complying with his bid.

The respondent, G. C. Gibson, was not a party to the original foreclosure and had no interest therein and attended the sale as a member of the public. The Master, prior to said sale, announced that no personal or deficiency judgment was demanded in the action and that the bid would not remain open; that the purchaser would be required to comply with the terms of the sale immediately.

Subsequent to the execution and delivery of the note and mortgage forming the subject-matter of the foreclosure, petitioner and his wife had become estranged and separated but not divorced. If petitioner had paid off the mortgage he would have been confronted with his wife's claim of dower; and he could not refinance the mortgage since she would not renounce her dower rights either on a new mortgage or on a deed from petitioner to his son, W. Curtis Howell.

Vance Edwards, the mortgagee, placed the note and mortgage in the hands of Love and Thornton, Attorneys, for foreclosure, which proceedings was instituted on February 27, 1945, as hereinabove stated. Before institution of the foreclosure suit, Attorney Love talked with J. B. Howell, the petitioner, and his son, W. Curtis Howell, in the office of D. B. Leatherwood, Attorney, with reference to the amount the mortgagee would accept in compromise of the mortgage debt, and at this conference it was agreed that the matter should go through foreclosure and public sale and that Curtis Howell, petitioner's son, would take title because of petitioner's domestic situation. On April 11, 1945, Attorney Love wrote Attorney Leatherwood a letter, which is a part of the record. In said letter the mortgagee agreed to accept $8,500.00 for his mortgage debt provided he was the successful bidder at the sale. The letter states that if a third person bids the property in at a sum in excess of $8,-

500.00, there would be no obligation on the part of the mortgagee or his attorneys to protect the interest of Curtis Howell, and he would have to do his own bidding at the sale and that should the property bring more than $8,500.00, the mortgagee would benefit thereby up to the full amount of the mortgage debt. Attorney Love talked with Attorney Leatherwood on one or more occasions about the matter and on or about April 15, 1945, J. B. Howell and his son, W. Curtis Howell, talked with Attorney Love in an effort to get the mortgagee to accept $7,500.00 on the ground that this was all they could raise. The mortgagee refused to alter the agreement contained in the letter of April 11th. Curtis Howell had already made application to the National Farm Loan Association in his own name for a loan on the mortgaged premises which loan had been approved, and he was going to sell some machinery to raise the necessary money "to pay the mortgage debt."

Such was the situation between the mortgagee, Vance Edwards, the mortgagor, J. B. Howell, and the mortgagor's son, W. Curtis Howell, at the time of the sale, May 7, 1945. Respondent, G. C. Gibson, attended the sale after having read the Master's Legal Advertisement and had no knowledge of the agreement hereinabove set forth.

The public sale was held in the Greenville County Court House, and the Master, who conducted the sale, occupied the seat customarily used by the Clerk of Court. James L. Love, Attorney for Vance Edwards, was sitting in front of and to the right of the Master, at the place customarily occupied by the Circuit Solicitor. The petitioner, Attorney D. B. Leatherwood, petitioner's son, W. Curtis Howell, and the wife of W. Curtis Howell were present, occupying the first row of seats inside the bar to the right of the entrance as one proceeds toward the bench, six or eight feet from the Master and the auctioneer, and immediately in front of them. The respondent, G. C. Gibson, sat inside the bar in the first row of seats to the left of the Master and auctioneer, in front of the panel customarily occupied by the Grand

Jury. All these parties were in clear view of the Master and the auctioneer and there was nothing to obstruct their view of these parties. After the Master read the Legal Advertisement and explained the terms of the bid, Grady Foster, the auctioneer, stood at the Master's left side and began to cry the sale. James L. Love, as attorney for Vance Edwards, initiated the bidding at $5,000.00, and continued bidding until the bid reached $8,550.00, this being the final bid he entered in behalf of Vance Edwards. D. B. Leatherwood, attorney, did not bid until the bidding reached $8,550.00, but after James L. Love, Attorney, stopped bidding, he participated in the bidding until it reached $9,100.00, the bid of G. C. Gibson. Attorney Leatherwood, in his affidavit, states that at this point he made a motion with his hand to the auctioneer to hold the sale to ascertain from the Howells whether or not they wanted him to continue higher and to what point; that he asked W. Curtis Howell, sitting to his left, whether or not they wanted to bid more and he (Curtis) in turn proceeded to talk with his father and that during said time the auctioneer knocked the property off to the respondent, G. C. Gibson. E. Inman, Master, and Grady Foster both testified, that they saw no such signal given, although they were in clear position to see it if such a signal had been given. They, and numerous other witnesses, testified that after no person indicated a higher bid, W. Grady Foster, the auctioneer, cried "$9,100.00 once, $9,100.00 twice," and then waited the customary length of time before crying "$9,100.00 third and last time, sold to G. C. Gibson." After the sale, respondent paid his $500.00 earnest money to the Master.

The bidding was participated in by several persons, including the respondent, James L. Love, Attorney, D. B. Leatherwood, Attorney, and some other person in the audience, and proceeded in bids of $50.00 and $100.00 until it reached $9,100.00.

The Master sold another piece of property following the Howell sale and at no time during the entire course of the

sales was there any announcement of protest made by J. B. Howell, W. Curtis Howell, D. B. Leatherwood, Attorney, or any other person present, that the Howell sale had not been fairly and openly conducted or that any person had not been afforded ample opportunity to bid on the property before the bidding was closed. After the sale, Attorney Leatherwood made no protest to the respondent or the Master, although he conversed with the respondent while respondent was making his deposit with the Master in the court room immediately after the sale. There was no intimation on the part of any person present of any irregularity, inequity, or injustice caused to any person present. The sale was freely and openly conducted according to the laws of this State and the custom of auctions.

It is reasonable to conclude that if there had been any irregularity in the conduct of the sale or any dissatisfaction on the part of the petitioner, or W. Curtis Howell, as to the failure to give either of them an opportunity to bid, some protest or announcement of that fact would have been made by them, or by Attorney Leatherwood, immediately after the property was knocked down to Gibson. Instead, the Petitioner herein, who was not bidding on the property himself or by attorney and who was not to become the purchaser thereof at the sale, waited five days to institute this proceeding.

The Court does not deem it necessary to decide whether or not D. B. Leatherwood, attorney, gave any signal to the auctioneer. It is to be noted, however, that both the Master and the auctioneer state that they were watching all the bidders and that they would have seen such a sign if it had been given. The important fact in the case is that there was no irregularity in the sale and that neither the Master nor the auctioneer did anything which would tend to confuse or mislead the petitioner or the public. The respondent bid on the property as a member of the public without any knowledge of the pre-existing plan with reference to the bidding, and without any knowledge that Attorney Leather-

wood motioned the auctioneer, if he did in fact make such a motion. It is apparent that the plan between the parties to this proceeding was to clear the title from any. claim of the petitioner's wife to dower rights therein and to place title in W. Curtis Howell, the petitioner's son, for the use and benefit of the petitioner and his son to the exclusion of any claim that his wife might have to dower rights therein. The Court does not make this finding in criticism of the parties, or their attorneys, but when a public sale is resorted to for the purpose indicated, the parties do so at their own risk.

It is also apparent that if the affidavits of petitioner and his son are to be accepted, they did not in good faith intend for this "public" sale to be openly participated in by the public generally, with any intention that a bid on the part of a third person would have any chance of acceptance. Although the record is replete with evidence that petitioner and his son could not raise more than $8,500.00, the affidavit of J. B. Howell states "that he understood that his attorney was to bid in the property without any question as to the limit to which the bid might go;" in other words, that he understood that the property was to be bid in for him and it never occurred to him at any time that the property might be sold to anyone else. The affidavit of W. C. (Curtis) Howell contains the following statement: "that deponent understood and he thought Mr. Leatherwood understood that the property was to be bid in for them irrespective of any bids that might be made by disinterested persons." * * * "that it was his understanding and the understanding of his father that the property was to be bought in for them irrespective of the amount of the bid necessary to secure same."

There is considerable testimony as to the value of the premises sold, witnesses for the two parties vary from $9,-100.00 to $20,000.00. This Court is unable to hold, from the showing made, that the price of $9,100.00 is grossly inadequate. This conclusion is amply supported by the testimony of experienced real estate dealers and others. It is fur-

ther supported by the fact that the petitioner and his son must have represented to the mortgagee, or his attorney, that the property would not bring more than $8,500.00 in inducing him to accept said amount in satisfaction of his mortgage debt of $10,610.32, with interest, since neither of them admitted to said attorney that it was worth $9,100.00, or more, until two or three days after the sale, when they came to Attorney Love's office and requested him to set aside the sale and have the land resold.

The Court finds no sufficient showing in the present case of such a gross inadequacy of price as to shock the conscience. The authorities are uniform in holding that inadequate consideration, standing alone, is not sufficient to set aside a deed made at a public sale under order of the Court. *Courtenay Manufacturing Company v. Isaqueena Mills et al.,* 179 S. C., 480, 184 S. E., 849 (and cases cited therein).

In *Wooten v. Seanch,* 197 S. C., 219, 222, 196 S. E., 877, we find the following:

"It is the established rule of this jurisdiction to uphold judicial sales, when regularly made, 'When it can be done without violating principle or doing injustice'." *Farr v. Gilreath,* 23 S. C., 502 quoted with approval in *Jefferson Standard Life Ins. Co. v. Standard Bldg. Co.,* 174 S. C., 150, 177 S. E., 24, 27.

"It is equally well established as a rule of law in this jurisdiction that mere inadequacy of price is not alone sufficient ground for setting aside a judicial sale. The rule is thus stated in the case just above cited: 'No doubt the rule is that inadequacy of price unless it is so gross as to shock the conscience, or accompanied by other circumstances warranting the interference of the Court, is not enough to move the Court to set aside a sale fairly made.'

"Are 'the other circumstances' relied upon by appellant in this case such as should sustain the motion to set aside the sale? To have that effect there must be such irregularity in the proceedings as to show that the sale was not fairly

made, or that appellant was defrauded or misled to his injury and loss."

The facts of the instant case bring it within the rule laid down by the Supreme Court in *Peoples National Bank of Greenville v. Hudson,* 179 S. C., 399, 184 S. E., 102. In that case, Hunter bid $7,000.00 for the premises sold, and the appellant, Hudson, bid $6,105.00 for said premises. Hunter gave a check for the five per cent. deposit required in the decree, but the appellant made his deposit with the Master in cash. Judge Oxner held that Hudson was the only person making a legal deposit, but that due to the fact that the Master accepted the personal check of Hunter for $350.00 during the course of the bidding, the sale had been so irregular, resulting possibly in a chilling of the bidding, that both bids should be rejected and there should be a resale of the property at some subsequent sales day. The Supreme Court, in reversing this decree, held that Hunter was charged with notice of the terms of the decree of sale stating "the order of the Court is the blazed way for the officer to follow and no other." It was further held that the property should not be resold, but that the property should be conveyed by the Master to Hudson, who put up a cash deposit, although approximately $900.00 under the highest bid.

The Court, in the *Peoples National Bank case, supra,* differentiates the facts of that case from the cases of *In re: Ragland,* 172 S. C., 544, 174 S. E., 592, and *Poole v. Insurance Company,* 174 S. C., 150, 177 S. E., 24, relied upon by petitioner in the instant case.

The Court says of the *Ragland case:*

"In the *Ragland case,* the sale was being made by a receiver, and there was a misunderstanding as to where the bids would be received, and bids were being made at separate points, and there was no doubt about the inadequacy of the bids. The Circuit Judge ordered a resale, and this Court affirmed said order, agreeing with the conclusions reached therein, and then Mr. Chief Justice Blease, writing the opinion of the Court, stated: "We wish to add two ob-

servations. The first is that the sale made, or sought to be made, by the receivers, was subject to the confirmation of the Court, and, since it appears that the price offered by the highest bidder was entirely inadequate, the Circuit Judge may have well refused to have confirmed the bid, even if there had been no misunderstanding on the part of the respective bidders as to the place of filing the bids. The new sale, ordered by the Judge, confirms the fact that the bids made at the first sale were entirely too low, for at the second sale, ordered by Judge Oxner, the property brought $25,-000.00, about four times as much as the bids obtained at the first sale."

The Court says of the *Poole case:*

"In the *Poole case,* due in part to the carelessness of a clerk in the Master's office, a bid of $4,000.00 by the attorney for the insurance company was not entered, as against Poole's bid of $500.00 regularly made, and a resale was ordered, which order on appeal was affirmed. Mr. Justice Bonham, who wrote the opinion of the Court, had this to say: 'It is true that the rule is well settled that mere inadequacy of price is not sufficient ground for setting aside a judicial sale, but inadequacy of price, coupled with other incidents affecting the sale, may be sufficient ground. The rule is thus stated by Mr. Justice Hydrick in the case of *Bonham v. Cave,* 102 S. C., 308, 86 S. E., 681, 682: 'No doubt the rule is that inadequacy of price unless it is so gross as to shock the conscience, or accompanied by other circumstances warranting the interference of the Court, is not enough to move the Court to set aside a sale fairly made. But all the cases recognize the principle that where a party in interest has been misled to his detriment by the officer making the sale, *through no fault of his own,* relief may be had'."

In the case at bar, neither the petitioner nor his son, W. Curtis Howell, was misled to his detriment by the Master or the officer making the sale. There is no claim of mutual mistake on the part of the petitioner and the respondent or any of the other parties to the original cause, nor is there

any claim that any party to the proceeding acted collusively or fraudulently. The most that could be said in petitioner's behalf is that there was an unilateral mistake or some surprise or accident in connection with the sale, but such mistake, surprise, or accident was not caused by any one conducting the sale, but was brought about through the conduct of the petitioner himself, or his son, W. Curtis Howell, or his attorney.

It is clear that the petitioner and his son, W. Curtis Howell, never intended for any money to be passed between the two of them, should W. Curtis Howell be the successful bidder at the sale.

Courts are very jealous to insure that judicial sales be openly and freely conducted and nothing allowed to chill the bidding. The natural effect of the arrangement between the petitioner and his son here would be to chill the bidding at the sale so far as other members of the public are concerned.

In its final analysis, the case presented is this: The property was sold at a well-attended public sale, which was freely and openly conducted according to law and the custom of auction, in which all parties had ample opportunity to bid. If any signal was given to the auctioneer or the Master to hold the bidding, it was not seen; regardless of whether a signal was given or not, sufficient time was allowed petitioner and his son and all others present to raise the bid. It has already been held that there is no showing of such a gross inadequacy of price as to shock the conscience, and, in addition, the Court finds no other "attending circumstances" which would justify a resale of the premises upon a showing of mere inadequacy of price.

Judicial Sales 31 American Jurisprudence, Section 237:

"A sale which has been confirmed will not be set aside for mere inadequacy of price, on the ground of error or irregularity, for light, technical, or frivolous reasons. On the contrary, some special ground must be laid, such as fraud and collusion, accident, mutual mistake, breach of trust, or mis-

conduct upon the part of the purchaser or other party connected with the sale, which has worked injustice to the party complaining and was unknown to him at the time the sale was confirmed, in which event the sale may be set aside."

35 Corpus Juris, Section 162, page 100:

"A mistake or some surprise or accident in connection with the sale is ground for setting it aside, either before or after confirmation, provided the mistake was an injurious one, caused by someone connected with the sale, and was not a mistake of law or one due to the negligence of the party complaining."

In the case of *Harrison v. Williams,* 154 S. C., 407, 151 S. E., 570, the controversy was between two parties, not parties to the original suit, as to whom Attorney W. E. Finley was representing at the sale. Finley bid in the property for Williams, but Harrison, the appellant, had talked with him a few minutes before the sale and Finley told him that if he bid the land off for himself, that he would sell it to Harrison and others on certain terms, and that as Finley left to go to the sale he stated that if he got the property for less than a certain amount he might divide or share with Harrison, the appellant. Finley bid on the property at public sale and the appellant did not know that he was bidding for Williams and not for him (Harrison). Under these circumstances, the Court ordered a resale of the premises.

In the instant case, Attorney Leatherwood represented W. Curtis Howell and his father and there was no question as to whom he was bidding for and any mistake as to the amount he was to bid was brought about by their own mistake and not through any fault of the officers conducting the sale, or the respondent.

There were other legal remedies which petitioner might have pursued in relieving this property from his wife's claim of dower, if she had no dower interest therein. He chose to run the risks incident to a public judicial sale for the purpose of having his son bid the property in at any price without regard to its value and without any intention of paying

the bid. This plan did not succeed, but its failure was due to no fault of the Master, auctioneer, respondent, or any other person connected with the sale, but as stated in Corpus Juris Supra was due to the negligence or fault of the party complaining. The petitioner is now asking the Court to set aside this sale fairly conducted, so that another so-called public sale can be held at which no one other than petitioner or his son could be the purchaser, if their announced plan were allowed to be accomplished.

In *Ex Parte Keller,* 185 S. C., 283, 291, 194 S. E., 15, we find the following:

"A 'public sale' is one made at auction to the highest bidder; a sale where all persons have the right to come in and bid. For this reason, the Courts have always been careful to guard against any irregularities in the conduct of a judicial sale. It must be held in a public place, and full and ample notice of the time and place of the sale and the terms thereof are required to be given. And the chilling of bids has often been the ground for vitiating a judicial sale.

"As is stated in 35 C. J., 39, 40: 'Since it is in the interest of justice that a judicial sale should be so conducted as to yield to the owner the best price that can fairly be held, free, fair and competitive bidding is contemplated at such a judicial sale, and the law does not tolerate any influence likely to prevent competition; * * * any conduct on the part of those actively engaged in the selling or bidding that tends to prevent a fair, free open sale, or stifle or suppress free competition among bidders, is contrary to public policy, vitiates the sale, and constitutes ground for setting it aside upon the complaint of the injured party."

*Patterson v. B & A Mortgage Co.,* 112 S. C., 205, 99 S. E., 828:

"I have given the matter careful consideration, for, as said by the late Chief Justice Pope, delivering the opinion in *Ex Parte Lancaster,* 46 S. C., 279, 280, 24 S. E., 195, 197: 'If there is a matter that more concerns justice than another, it is that duty of Courts to prevent imposition

upon the unfortunate; and whenever wrongdoing, such as fraudulent combinations to chill or stifle fair competition at judicial sales, is made to appear, instantly a duty is laid upon Courts to root it out, to lay it bare, and to set it aside. * * * But, while Courts should be stern in the punishment of wrong, they should be as fearless in the protection of innocence, when such charge is made without sufficient ground therefor'."

Again, at page 210 of the South Carolina Report of the *Patterson case,* we find the following:

"It is undoubtedly the policy of the law to maintain judicial sales, whenever it can be done without violating principles or doing injustice; and in this view it is held that a purchaser at such sale is in no way responsible for mere irregularities in the proceedings, or even error in the judgment, under which the sale is made. *Tederall v. Bouknight,* 25 S. C., 280."

Petitioner is seeking the equitable assistance of this Court. One of the elementary maxims of equity, long recognized in this State, is that he who seeks equity must come into Court with clean hands. For the reasons hereinabove stated, the Court is of the opinion that petitioner has failed to bring himself within this maxim. The respondent is an innocent party and were the Court to order a second sale of the property, respondent would be without power to protect himself at such a sale, and would be prevented by the admitted arrangement from becoming the highest bidder for the property. Should it be said that petitioner is also an innocent party, then either he or respondent must suffer by the Court's decision of the issues involved; and since petitioner brought about the situation, it is equity that he rather than respondent should suffer.

NOW, THEREFORE, for the foregoing reasons, it is ordered, adjudged and decreed that the demurrer heretofore filed by the respondent be, and the same is hereby, overruled; and

It is further ordered, adjudged and decreed that the prayer for a resale of the property involved in this proceeding, and the prayer for a restraining order, temporary injunction and permanent injunction be, and the same are hereby, denied; and

It is further ordered, adjudged and decreed that the Master for Greenville County be, and he is hereby, authorized and directed to execute and deliver to respondent, G. C. Gibson, a deed conveying to him the premises sold in the main cause on sales day in May, 1945, in fee simple, free of liens and encumbrances, upon his compliance with the terms of the sale; and that respondent be let in possession of the premises upon production of said deed.