15826

BROWNLEE *ET AL.* v. MILLER *ET AL.*

(37 S. E. (2d), 658)

*Messrs. Wm. H. Smith* and *Willcox, Hardee, Houck & Palmer,* all of Florence, Counsel for Appellants,

*Mr. T. B. Bryant, Jr.,* of Orangeburg, Counsel for Respondents,

April 10, 1946.

MR. ASSOCIATE JUSTICE TAYLOR delivered the unanimous Opinion of the Court.

This appeal comes to this court from Orangeburg County upon the following agreed statement of facts:

1. F. L. Mellard, late of Orangeburg County, died leaving in full force and effect his last will and testament dated July 30, 1937, which was duly admitted to probate. The testator in and by this will devised to Misses Annie Brownlee and Nettie Brownlee his home and ten acres surrounding the residence. All of his other real property was devised to certain nieces and nephews in varying proportions.

On or about the 25th of August, 1939, Fred W. Mellard, one of the devisees, as plaintiff, instituted this partition action against the other devisees, as defendants, which suit resulted in a decree, dated August 18, 1940, for the sale of the real estate of the testator, including the remainder of the home place, described as containing 225 acres, without mentioning the part deducted under the will.

Pursuant to the decree, the land was sold at public outcry by the special referee on November 4, 1940, and the home place advertised as 225 acres was bid off by L. E. Miller and W. J. Colvin, the respondents, through their attorney, for the sum of $4,000.00. Thereafter the purchasers, respondents herein, paid the purchase price and the special referee executed his deed in fee simple in regular form, dated November 18, 1940, the property therein conveyed described as follows:

"All that certain piece, parcel or tract of land, situate, lying and being in School District No. 8, Holly Hill Township, Orangeburg County, South Carolina, containing two hundred twenty-five (225) acres, more or less, and bounded on the North by lands of Way, on the East by lands of Felkel, on the South by lands of Hutto and Brownlee, and on the west by lands of Mrs. Johnson.

"At the request of the Grantees the following is given as a more definite description of the above property:

"All that certain piece, parcel, or tract of land, situate, lying and being in School District No. 8, Holly Hill Township, County of Orangeburg, State of South Carolina, containing two hundred and twenty-five (225) acres, more or less, and bounded on the North by lands of R. F. Way, Holly Hill lumber Company, and estate lands of Albert Ap-

pleby; on the East by lands of E. A. Felkel and Neely Bryant; on the South by lands of the estate of Hutto and estate of Mrs. E. C. Brownlee, and lands of J. J. Baker, formerly Minnesota, South Carolina Land and Timber Company; and on the West by lands of Mrs. J. B. Johnson and lands of the Appleby Estate; the said tract of land hereby described being known as the home tract of the late F. L. Mellard, save and excepting ten (10) acres which has been surveyed off by N. J. Smith, Surveyor, on which is located the residence of the said F. L. Mellard."

Thereafter, on or about December 5, 1941, the appellants herein presented their petition to the court, seeking to set aside the sale upon certain grounds, in brief, that the description of the property as advertised was insufficient to pass the title to the property because the boundaries were incomplete and the actual acreage much in excess of that stated; the public not being able to know this; that the attempt in the deed by the purchasers to remedy these defects was ineffectual; that the consideration for the property was grossly inadequate; and that the petitioners were deprived of the right to bid upon the property.

Upon this petition Judge Stoll handed down an order dated December 5, 1941, requiring the respondents to show cause why the sale should not be set aside and the deed cancelled of record, and *pendente lite* restraining the respondents from disposing of the property. The special referee was *pro forma* made a party. Upon the return day, after argument, Judge Stoll, by order dated December 19, 1941, handed down an order referring the matter to Honorable John S. Bowman, County Judge, as special referee to take the testimony of the respective parties upon all of the matters, issues, and questions made by the petitioners. The testimony was taken May 14, 1943.

Thereafter L. D. Jennings, Esq., who originally represented the petitioners-appellants, died, and after some unavoidable lapse of time new counsel was substituted. Motion was made by the substituted counsel for an order directing that further testimony be taken by the special referee.

This motion was resisted by respondents, but the same was granted by his Honor, Judge L. D. Lide, in part, by an order handed down by him dated July 29, 1944, recommitting the matter to the special referee for the purpose of taking the testimony of two certain named witnesses only, with the right of respondents to introduce testimony in reply. Pursuant thereto, the special referee took this additional testimony on August 29, 1944.

The matter was argued before his Honor, Judge L. D. Lide, on July 2, 1945; and on July 5, 1945, he filed his order, which, because of its clarity this court will take the liberty of printing in its entirety.

2. Order of Judge Lide: "This matter comes before me upon a proceeding on the part of the petitioners above named against the respondents above named to set aside the judicial sale of certain real estate situate in Orangeburg County purportedly made under the decree of this court in the original case above stated. The matter was argued before me at my chambers at Marion on July 2, 1945, upon the testimony taken by Hon. John S. Bowman, County Judge, as Special Referee; and after argument of counsel for the respective parties was taken under advisement. A brief recital of the history of the litigation, and referring to some of the evidence, much of which is undisputed, will explain the issues to be determined herein.

"F. L. Mellard, late of the county aforesaid, died leaving in full force and effect his last will and testament, dated July 30, 1937, which was duly admitted to probate. The testator in and by this will devised to Misses Annie Brownlee and Nettie Brownlee his home and ten acres surrounding his residence, the same to be laid off in the discretion of his executor, S. J. McCoy. His other real property, including of course, the remainder of his home place, was devised to his other nieces and nephews, share and share alike, etc. The ten-acre tract was duly set apart to the named devisees by the executor. And on or about August 25, 1939, the above-stated case, to wit, a suit for partition, was brought by Fred W. Mellard, as plaintiff, against Mary

Bell Brownlee and others, as defendants, including the petitioners now before the court, and resulted in a decree dated October 18, 1940, for the sale for partition of the real estate of the testator other than that set apart as aforesaid, including the remainder of his home place, described as containing 225 acres, more or less, and bounded as hereinafter set forth. This suit was instituted and prosecuted by P. L. Felder, Jr., Esq., of the Orangeburg Bar, as attorney for the plaintiff.

"The decree directed the sale of the real estate at public auction by the County Judge, as Special Referee, on November 4, 1940, after due advertisement, and provided, among other things, that the bids would not be held open for thirty days for the reception of any higher bids; and the sale was duly held at the time specified. The land involved in the proceedings now before the court was bid off by L. E. Miller and W. J. Colvin, through their attorney, T. B. Bryant, Jr., Esq., of the Orangeburg Bar, for the sum of $4,000.00, they being at that price the highest bidders therefor. Thereupon pursuant to the terms of the decree a deposit of five per cent. of the bid, to wit, $200.00 was immediately made; and thereafter in due course, upon investigation of the title, the remainder of the bid was paid in, and Hon. John S. Bowman, County Judge, as Special Referee, executed to the purchasers, L. E. Miller and W. J. Colvin, his deed in fee simple in regular form, dated November 18, 1940; and the property therein conveyed is described as follows:

" 'All that certain piece, parcel or tract of land, situate, lying and being in School District No. 8, Holly Hill Township, Orangeburg County, South Carolina, containing two hundred twenty-five (225) acres, more or less, and bounded on the North by lands of Way, on the East by lands of Felkel, on the South by lands of Hutto and Brownleê, and on the West by lands of Mrs. Johnson.

" 'At the request of the Grantees the following is given as a more definite description of the above property:

" 'All that certain piece, parcel, or tract of land, situate, lying and being in School District No. 8, Holly Hill Township, County of Orangeburg, State of South Carolina, containing two hundred and twenty-five (225) acres, more or less, and bounded on the North by lands of R. F. Way, Holly Hill Lumber Company, and estate lands of Albert Appleby; on the East by lands of E. A. Felkel and Neely Bryant; on the South by lands of the estate of Hutto and estate of Mrs. E. C. Brownlee, and lands of J. J. Baker, formerly Minnesota, South Carolina Land and Timber Company; and on the West by lands of Mrs. J. B. Johnson and lands of the Appleby Estate; the said tract of land hereby described being known as the home tract of the late F. L. Mellard, save and excepting ten (10) acres which has been surveyed off by N. J. Smith, Surveyor, on which is located the residence of the said F. L. Mellard.'

"The first paragraph of the description above quoted is the same as the description of the land in the complaint, the decree, and the advertisement of sale, and further reference thereto will hereafter be made. A little more than a year after the sale, to wit, on December 5, 1941, the petitioners above named presented their petition to the court seeking to set aside the sale upon certain grounds hereinafter stated; whereupon Judge Stoll handed down an order dated December 5, 1941, requiring the respondents to show cause why the sale should not be set aside and the deed cancelled of record, and restraining the purchasers from disposing of any part of the land or timber, etc. Judge Bowman, as Special Referee, was also made a party but this of course was merely *pro forma*. Upon the return day a return was duly filed in behalf of the respondents, L. E. Miller and W. J. Colvin, and an order dated December 19, 1941, was handed down by Judge Stoll, referring the matter to the Hon. John S. Bowman, County Judge, as Special Referee, to take the testimony of the respective parties upon all of the matters, issues and questions made by the petition.

"The testimony was in due course taken by the Special Referee, and some time after the reference had been closed

Hon. L. D. Jennings, who originaly represented the petitioners, died, and other counsel were duly substituted in his stead. It having been agreed by counsel for all the parties in interest that this matter should be heard by me, a motion was made by the substituted counsel for an order directing that further testimony be taken by the Special Referee. This motion was resisted by counsel for the respondents, but the same was granted by me in part, that is to say, an order was handed down by me dated July 29, 1944, recommitting the matter to the Special Referee for the purpose of taking the testimony of two certain named witnesses only, with the right of respondents to introduce testimony in reply. Pursuant to this order the Special Referee took this additional testimony on August 29, 1944. And it should be stated in this connection that the delay in the hearing of this matter since the last testimony was taken was due to unavoidable circumstances for which none of the counsel engaged were in anywise responsible.

"The grounds upon which the sale of the tract of land in question is sought to be set aside may be stated as three in number, to wit: (1) That the description of the property as contained in the complaint, decree and advertisement is insufficient to pass the title to the property, because the boundaries are incomplete and the actual acreage is much in excess of that stated; and that the attempt in the deed to remedy these defects by a complete description is ineffectual; (2) that the consideration for the sale is quite inadequate; (3) that the petitioners were virtually deprived of the right to bid upon the property.

"Much emphasis in argument is laid upon the fact that the description contained in the Special Referee's deed hereinbefore quoted in full shows that the purchasers recognized that the description under which the property was actually sold was inadequate as a matter of law and attempted to cure it by the addition of 'a more definite description'. I think it is quite true that an officer making a judicial sale cannot thus validate a sale which was *void* because of insufficiency of description; although there would

seem to be no good reason why a good but incomplete description might not be completed.

"But I have determined to consider the case just as if the deed contained nothing but the description in the first paragraph as above quoted, that is to say, the description which conforms to that contained in the complaint and the decree in the partition suit and the advertisement thereunder. And having given careful consideration to the same, I am convinced that this description was quite sufficient to pass the title to the property pursuant to the rule of law as laid down in our decisions.

"At the first reference before the Special Referee a plat of the entire home place of the estate of F. L. Mellard was introduced in evidence, the same having been made by two competent surveyors, one of whom appears to have represented the petitioners and the other the respondents. This plat shows that the total area of the original tract was 320 acres, and deducting therefrom what is called the "Old Mellard Settlement', 10 acres, set off to the Misses Brownlee hereinabefore mentioned; the public roads, 3 acres; and the railroad right-of-way, 5 acres; aggregating 18 acres; would leave the net acreage of the tract involved herein as 302 acres, that is to say, 77 acres more than the acreage given in the description, to wit, 225 acres, more or less. The testimony of Mr. Felder, attorney for the plaintiff, shows that the acreage of the original tract as listed on the County Auditor's books was 235, and hence he used the figure 225 acres, more or less, for the balance of the home place after deducting the ten-acre parcel set off to Misses Annie Brownlee and Nettie Brownlee. And it may be observed that the testimony of Mr. S. J. McCoy, the executor, taken in the partition suit, was also to the effect that the home place 'was 235 acres', and that the ten-acre parcel was cut off that tract.

"It is of course a proposition too elementary for any citation of authority that boundaries govern acreage and inaccuracies relating to the area of a tract are generally immaterial. And so far as the boundaries are concerned the

evidence shows conclusively that not a single one of them is erroneous, although there are other adjoining landowners whose names are not given. But the mere failure to include all the adjoining landowners was certainly insufficient to invalidate the description. And I am quite sure that there is a large number of valid deeds of conveyance of lands on the records in South Carolina containing descriptions no more (or even less) complete than that in the deed before the court. For it is well known that laymen frequently (and lawyers at times) describe lands merely by giving the northern, eastern, southern and western boundaries (and sometimes incompletely), and the estimated acreage, just as if the land were in the form of a perfect square, whereas, very often its contours are quite irregular.

"The rule of law recognized in our courts is well expressed in the following excerpt from the opinion of the Supreme Court in the case of *McNair v. Johnson,* 95 S. C., 176, 179:

" 'Another maxim of law applicable to this case is: "That is sufficiently certain which can be made certain."

" 'In Devlin on Real Estate, Vol. 2, Section 1012, the author says: "A deed is not void for uncertainty, because there may be errors or an inconsistency, in some of the particulars. . . . Generally the rule may be stated to be, that the deed will be sustained, if it is possible from the whole description, to ascertain and identify the land intended to be conveyed." In a note to that section it is said: "As that is certain which can be made certain, the description, if it will enable a person of ordinary prudence acting in good faith and making inquiries, which the description would suggest to him to identify the land, is sufficient".

"Applying the rule thus laid down to the case at bar, it is quite clear that the description was sufficient to enable a person of ordinary prudence acting in good faith and making inquiries suggested by the description to enable him to identify the land. And indeed, the surveyors had no trouble in locating the land, and they testified that the lines thereof were fairly well established. Moreover, the evidence makes

it perfectly plain that the petitioners fully understood that the land being sold was the home place.

"Referring to the charge that the price paid for the property was inadequate, the testimony, as is usual in matters of value, varies greatly. There is testimony in behalf of the petitioners that the timber cut from the land by the purchasers was approximately one million feet, and was worth from $8,000.00 to $10,000.00, and that the land without the timber was worth around $3,000.00. And another witness for the petitioners valued the land without the timber as being worth $13.00 an acre. On the other hand the testimony of Mr. E. A. Felkel, one of the adjoining landowners, was to the effect that the place was well sold at $4,000.00 and that 'he would not have given any more for it, timber and all'. And Mr. S. J. McCoy, the Executor, testified that he had offered to lend Mr. T. M. Brownlee $1,800.00 to $2,000.00 upon the place if he could buy it, but that he would not have been willing to lend him $4,000.00 on it. And it should be observed that Mr. Miller, one of the purchasers, testified that the amount of timber cut from the place was less than half a million feet.

"It is thus apparent that the evidence is quite conflicting on the matter of valuation. And certainly, even if the testimony on behalf of the respondents on this point were disregarded, it could not be held that the consideration was so inadequate as in itself to warrant setting aside the sale. For it is clear that the price could not in any event be considered *grossly* inadequate. And even a grossly inadequate bid standing alone is insufficient to set aside a judicial sale in this state, unless it is so gross as to shock the conscience of the court. Some of the authorities on this question will be hereinafter cited.

"The evidence taken before the Special Referee shows in some detail just how the sale was conducted, and there is not the slightest suggestion of any irregularity on the part of the Special Referee or auctioneer. There seem to have been a number of bids made. Mr. Felder, representing some prospective purchasers, bid the property up to $3,500.00.

J. L. Dukes, Esq., of the Orangeburg Bar, a highly reputable and experienced attorney, represented T. M. Brownlee and some other devisees in interest at the sale, and he bid the property up to 'practically $4,000.00', but said he did not go any higher because Mr. Brownlee, who was sitting right by him, did not indicate to him that he should do so; and the result was that Mr. Bryant, who represented Messrs. L. E. Miller and W. J. Colvin, made the last and highest bid in the sum of $4,000.00, and the property was knocked off to his clients. Mr. Dukes testified positively that he bid as long as he was requested to do so, and furthermore that there was nothing to keep Mr. Brownlee from bidding himself if he had so desired. On the other hand, Mr. Brownlee testified that when the property reached $4,000.00 he told Mr. Dukes to go on, but that he would not do so, stating that it was a good price and that he would let them have it.

"At the hearing before me it was earnestly argued by counsel for the petitioners that at any rate there was a misunderstanding between Mr. Dukes and Mr. Brownlee, and that hence in view of this situation the sale ought to be set aside. But if we assume that there was such a misunderstanding, surely this could not be held to affect the rights of the respondents, for they were in nowise responsible for such a supposed misunderstanding. The rights of the purchasers at judicial sales would indeed rest upon an insecure basis if they could lose the property thus acquired by them because of any such controversy, to which they were in no sense parties. And this same principle fully applies to the testimony, taken at the second reference, of Miss Nettie Brownlee, which should of course be read in the light of the testimony of Mr. Dukes in reply thereto.

"I have endeavored to consider with all due care every argument presented in behalf of the petitioners, especially as they evidently feel greatly aggrieved or disappointed at their failure to acquire the property in which they were interested, because of family ties, as well as location or other reasons. But under the law of this state the legal rights of purchasers at judicial sales cannot be disregarded, for it will

be remembered that under the terms of the decree in this case, and the established practice in this state, the purchasers being the highest bidders at the sale, were not only entitled to the property, but they incurred the irrevocable obligation of taking it.

"The old case of *Young v. Teague,* Bailey Eq., 13, really lays down the principles governing this case. It is there held that the English practice of opening the biddings upon the offer of an advance at any time before the confirmation of a report on sale does not apply to judicial sales in this state; and moreover, that it is not a sufficient ground for setting aside a sale that one of the parties interested intended to bid higher but neglected to do so or was prevented by a mistake at the time of the sale, *if neither the selling officer nor the purchaser contributed to the mistake,* and the sale was fairly and regularly conducted; 'and it makes no difference that some of the parties are minors'.

"It is true that in some jurisdictions sales are subject to confirmation and that higher bids may be received before confirmation, and in other jurisdictions the title at least does not pass until the sale is confirmed. Much might be said in favor of a practice of this kind, but it is not the rule in this state (the '30 day statute' not being applicable to this case), and the principles laid down in the cases cited are sustained by many other later authorities, to some of which attention will be called.

"In the case of *Bonham v. Cave,* 102 S. C., 308, 86 S. E., 681, the Court says:

" 'No doubt the rule is that inadequacy of price, unless it is so gross as to shock the conscience, or accompanied by other circumstances warranting the interference of the Court, is not enough to move the Court to set aside a sale fairly made. But all the cases recognize the principle that where a party in interest has been misled to his detriment by the officer making the sale, through no fault of his own, relief may be had. Ordinarily, however, it will not be granted for such mistakes or errors of judgment, *unless they have been caused or contributed to by the officer making*

*the sale, or the purchaser.* It is also true that it is the policy of the law to sustain judicial sales fairly made —a wholesome rule which should be firmly adhered to.' (Emphasis added.)

"In the case of *Patterson v. B. & A. Mortgage Co.,* 112 S. C., 205, 99 S. E., 828, the Court says:

" 'The Court ordering the sale had jurisdiction of the subject matter, and all proper parties were before the Court when the order was made.

" ' "It is undoubtedly the policy of the law to maintain judicial sales, whenever it can be done without violating principles or doing injustice; and in this view it is held that a purchaser at such sale is in no way responsible for mere irregularities in the proceedings, or even error in the judgment, under which the sale is made." *Tederall v. Bouknight,* 25 S. C., 280.'

"In the rather recent case of *Wooten v. Seanch,* 187 S. C., 219, 196 S. E., 877, the principles applicable to the case at bar are also well stated. The Court, speaking through Mr. Justice Bonham (later Chief Justice), says:

" 'It is the established rule of this jurisdiction to uphold judicial sales, when regularly made, "when it can be done without violating principle or doing injustice." *Farr v. Gilreath,* 23 S. C., 502, quoted with approval in *Jefferson Standard Life Ins. Co. v. Standard Bldg. Co.,* 174 S. C., 150, 177 S. E., 24, 27.

" 'It is equally well established as a rule of law in this jurisdiction that mere inadequacy of price is not alone sufficient ground for setting aside a judicial sale. The rule is thus stated in the case just above cited: "No doubt the rule is that inadequacy of price unless it is so gross as to shock the conscience, or accompanied by other circumstances warranting the interference of the Court, is not enough to move the Court to set aside a sale fairly made."

" 'Are "the other circumstances" relied upon by appellant in this case such as should sustain the motion to set aside the sale? To have that effect there must be such irregularity in the proceedings as to show that the sale was not fairly made,

or that appellant was defrauded or misled to his injury and loss.'

"Something was said in the course of the argument before me relating to an *ex parte* order of confirmation of the sale involved herein; the argument on behalf of the petitioners relating thereto being that the purchasers procured this order because they were aware that their rights to the property were seriously questioned. Counsel for the respondents, however, stated that the order was procured by Mr. Felder, attorney for the plaintiff in the partition suit, and that the purchasers had nothing to do with it. However, none of this is material, since this *ex parte* order admittedly could have no effect whatever upon the matters now before the Court.

"I am therefore of opinion that the petition to set aside the sale and to cancel the deed should be dismissed, the rule to show cause discharged, and the temporary restraining order vacated; and that the sale of the premises in question to L. E. Miller and W. J. Colvin and the Special Referee's deed to them should be adjudged valid, legal and binding, and confirmed in all respects. And it is so ordered."

From this order appellants now come to this court upon exceptions which raise several questions.

All of which are clearly stated and disposed of in the above order to the satisfaction of this court (see *Gibson v. Howell,* Westbrook's Opinions, February 9, 1946), except that it is contended by appellants that their motion by substituted counsel for an order directing that further testimony be taken by the special referee should have been granted without limitations and the special knowledge on the part of the successful bidders was such as to give them an advantage over the general public and therefore the sale should be set aside.

When the motion for an order directing that further testimony be taken by the special referee was made before Judge Lide, he inquired as to just what the appellants wished to prove and by whom, upon being furnished the names of the proposed witnesses, an order was issued direct-

ing the special referee to take the testimony of these witnesses and those proffered by the respondents in reply and no more. Appellants contend that such limitation should not have been made. The duty was upon the appellants to make such a showing as would warrant the taking of further testimony, and in doing so named the witnesses whose testimony they wished taken. This request was granted and this court sees no error in placing such limitation thereon.

The trial court has a right to recommit a case on its own motion or the motion of either party or it may take additional testimony if it thinks proper.

*Ex Parte: Zeigler, In Re: Haydock Carriage Co. v. Zeigler,* 70 S. E., 726, 88 S. C., 168; *Holk v. Stoddard,* 45 S. E., 140, 67 S. C., 147.

As to the question of special knowledge of the respondents, it should be stated that they owned property adjoining the premises in question and it may be assumed that they were reasonably familiar with this property but there is nothing in the record that would warrant the setting aside of the sale on such grounds. Everyone knew it was the home tract less the 10 acres. Mr. T. M. Brownlee, one of the petitioners testified that had he been the successful bidder he would have expected to get all of the home place except the ten acres.

This court is of the opinion that all exceptions should be overruled and the judgment affirmed and it is so ordered.

MR. CHIEF JUSTICE BAKER, MESSRS. ASSOCIATE JUSTICES STUKES and OXNER and MR. ACTING ASSOCIATE JUSTICE STEVE C. GRIFFITH concur.