644 S.E.2d 802

**Ex Parte EASTERN SAVINGS BANK, FSB, Appellants,**

**v.**

**Albert J. SANDERS, Jr., Respondent.**

**In re Eastern Savings Bank, FSB, Plaintiff,**

**v.**

**Roy A. Rouse, a/k/a Roy Rouse; Jean C. Rouse, a/k/a Jean Rouse; Neff Rental, Inc.; and Oswald Wholesale Lumber, Inc., Defendants.**

**No. 4234.**

Court of Appeals of South Carolina.

Heard April 3, 2007.

Decided April 16, 2007.

350

Thomas A. Shook and Sean O'Connor, both of North Charleston, for Appellant.

James W. Poag, Jr., of West Columbia, for Respondent.

ANDERSON, J.:

Eastern Savings Bank, FSB appeals the master-in-equity's denial of its motion to vacate and set aside a foreclosure sale because of a bidding mistake by Bank's counsel and low sales price that resulted. We affirm.

## *FACTUAL/PROCEDURAL BACKGROUND*

Eastern Savings Bank, FSB ("the Bank") obtained a mortgage from Roy and Jean Rouse in the amount of $490,000.00 on real property and a house located at 117 Maxie Road in Lexington ("the Property"). When the Rouses failed to make their scheduled payments, the Bank elected to accelerate payment of the entire indebtedness, which, including attorney's fees and costs, amounted to $578,303.20. In August 2005, the Bank sought foreclosure of the mortgage and expressly demanded the right to a deficiency judgment, reserving the right to waive the deficiency at the time of sale. The master entered a judgment of foreclosure for the Bank and ordered the Property sold at public auction.

Following advertisement, the Property was set to be auctioned on October 3, 2005, a regularly scheduled sales date. The Bank instructed its counsel to bid up to $550,000.00 for the property. This information was communicated to Bonnie Hook, a paralegal for the Bank's law firm who typically worked with foreclosures. Hook did not personally go to the sale, but instead sent her assistant with instructions to "begin [bidding] at $100,000.00 and to go up to $550,000.00." Following Hook's instructions, the representative bid $100,000.00. There were no other bids made at that time.

Pursuant to section 15–39–720 of the South Carolina Code (2005), bidding was reopened on November 2, 2005, with several individuals placing offers. Albert Sanders had the highest bid ($246,000.00) and paid the requisite five percent deposit to the court. Neither the Bank, its counsel, nor any other representative was present at the second auction. Presumably, they declined to attend because the Bank was barred from making another bid under section 15–39–720, or possibly because they simply had not realized bidding had not closed after the October 2 proceeding.

On November 3, 2005, the Bank inquired with Hook in regard to the bid from Sanders. Hook then contacted the court, whereupon she learned the Property involved a deficiency judgment and immediately recognized she had made a mistake in her earlier bidding instructions to her assistant.

On November 9, 2005, the Bank filed a motion to vacate and set aside the sale to Sanders. The Bank argued the low sales price, along with the misunderstanding and circumstances that caused the Bank to mistakenly bid only $100,000.00, dictated the sale be set aside. Additionally, the Bank asserted the price Sanders paid was so low as to shock the conscience of the court.

The master held a hearing on the matter in January 2006. As stated in the master's order, Hook "candidly admitted that she made a mistake in her bid instructions and that no one else was responsible for the error. She stated that the sale was properly held and that no third party interfered with bidding."

Testimony and other evidence provided values of the Property ranging from $324,940.00 to $900,000.00. The assistant vice-president for the Bank testified that despite Bank authorizing only $550,000.00 as its highest bid, he valued the Property at $700,000.00 for lending purposes. Although the Rouses never received an offer, the home had been marketed for sale prior to foreclosure and was listed for as low as $625,000.00. Renee Bolos, the real estate agent who first represented the Rouses, stated she estimated the Property to be worth $900,000.00. Rusty Johnson, a real estate agent who later attempted to sell the Property, valued it at $750,000.00. After listing the Property at this price for six months, the amount was reduced to $600,000.00. Nevertheless, Johnson was unable to generate any offers. When the Rouses attempted to sell the Property at private auction with a reserve price of $650,000.00, the highest bid received was $350,000.00. The county tax appraisal for the home was $324,940.00.

The master found the value of the Property to be $550,000.00. Although recognizing the sales price was below market value, he stated that he did not believe it to be so inadequate as to shock the conscience of the court. Further, the master determined it was by mistake on the part of the

bidder on the Bank's behalf, not any conduct by the sales officer or other bidder, that caused the winning bid to be less than the actual value of the Property. Accordingly, the master denied the Bank's motion to vacate and set aside the sale. The Bank filed a Rule 59(e), SCRCP, motion to alter or amend the judgment. The master denied this motion.

## STANDARD OF REVIEW

"A mortgage foreclosure is an action in equity. Our scope of review of a case heard by a master who enters a final judgment is to determine facts in accordance with our own view of the preponderance of the evidence." *Hayne Federal Credit Union v. Bailey,* 327 S.C. 242, 248, 489 S.E.2d 472, 475 (1997) (internal citations omitted). However, the determination of whether a judicial sale should be set aside is a matter left to the sound discretion of the trial court. *Investors Sav. Bank v. Phelps,* 303 S.C. 15, 17, 397 S.E.2d 780, 781 (Ct.App. 1990) (citing *Bonney v. Granger,* 300 S.C. 362, 387 S.E.2d 720 (Ct.App.1990)). The review of a judicial sale is equitable in nature and within the discretion of the trial court. *Fed. Nat'l Mortgage Ass'n v. Brooks,* 304 S.C. 506, 512, 405 S.E.2d 604, 607 (Ct.App.1991) (citing *Spillers v. Clay,* 233 S.C. 99, 102, 103 S.E.2d 759, 760 (1958)).

## LAW/ANALYSIS

The Bank contends the master erred in failing to grant its motion to set aside and vacate the sale. We disagree.

Where a mortgagee has sought a deficiency judgment, law requires the foreclosure sale held open for thirty days after the initial sale date. S.C.Code Ann. § 15–39–720 (2005). The South Carolina Code provides:

In all judicial sales of real estate for the foreclosure of mortgages and sales in execution the bidding shall not be closed upon the day of sale but shall remain open until the thirtieth day after such sale, exclusive of the day of sale. Within such thirty day period any person other than the highest bidder at the sale or any representative thereof in foreclosure and execution suits may enter a higher bid upon complying with the terms of sale by making any necessary deposit as a guaranty of his good faith, and thereafter

within such period any person, other than such highest bidder at the sale or any representative thereof, in foreclosure suits may in like manner raise the last highest bid, and the successful purchaser shall be deemed to be the person who submitted the last highest bid within such period and made the necessary deposit or guaranty. But the mortgagee or his representative shall enter such bid as he desires at the time the sale is made, and he and all persons acting in his behalf shall be precluded from entering any other bid in any amount at any other time except the single or last bid made by him or in his behalf at the sale. . . .

The bidding shall be reopened by the officer making the sale on the thirtieth day after the sale, exclusive of the day of the sale, at eleven o'clock in the forenoon and the bidding shall be allowed to continue until the property shall be knocked down in the usual custom of auction to the successful highest bidder complying with the terms of sale. . . .

S.C. Code Ann. § 15–39–720 (2005). Thus, "[t]he mortgagee must enter his bid at the time the sale is made and is precluded from entering any other bid after his last bid at the initial sale. This effectively forces the mortgagee to enter his highest and best bid at the initial sale." 27 S.C. Juris. *Manner of Sale* § 128 (1996) (internal citation omitted).

■ "A judicial sale should not be set aside except for cogent reasons. The purpose of the law and of the proceedings in which a sale has been decreed is that it shall be final." *Spillers v. Clay*, 233 S.C. 99, 104, 103 S.E.2d 759, 761–62 (1958). "As has been said time and again in cases involving the setting aside of judicial sales, it is the policy of the Courts to uphold such sales when regularly made, and when it can be done without violating principle or doing injustice. . . ." *Henry v. Blakely*, 216 S.C. 13, 18, 56 S.E.2d 581, 583 (1949). Our courts zealously insure judicial sales be openly and freely conducted and nothing be allowed to chill the bidding. *Howell v. Gibson*, 208 S.C. 19, 31, 37 S.E.2d 271, 276 (1946).

■ "[T]he rule is well settled that inadequacy of price, unless so gross as to shock the conscience of the court, or accompanied by other circumstances warranting the interference of the court, will not justify the setting aside of a judicial sale." *Spillers*, 233 S.C. 99, 104, 103 S.E.2d 759, 761 (citing

*Brownlee v. Miller,* 208 S.C. 252, 37 S.E.2d 658 (1946)). "[M]ere inadequacy of price, unaccompanied by other circumstances which would invoke the exercise of the Court's discretion is not sufficient, unless, perhaps, it is so great as to raise a presumption of fraud or to shock the conscience of the Court." *Henry,* 216 S.C. at 18, 56 S.E.2d at 583. "Where unfair means have not been employed to prevent competition at a judicial sale, mere inadequacy of price is no ground for setting [the sale] aside." *Ex parte Cooley,* 69 S.C. 143, 154–55, 48 S.E. 92, 95 (1904). Thus, a judicial sale can be set aside for two reasons: (1) if the inadequacy of the price is so gross as to shock the conscience of the court; or (2) if the price is inadequate and this inadequacy is accompanied by other circumstances that warrant the interference of the court.

## I.   Circumstances Impeaching the Fairness of the Transaction

■■   When an inadequacy of price exists and is the result of action by the officer selling the property or successful bidder, and that action could not have been reasonably anticipated by the party for whose benefit the property was being sold, the court should provide relief by setting aside the sale. *See Henry,* 216 S.C. at 19, 56 S.E.2d at 583. "[T]he circumstances impeaching the fairness of the transaction should relate to the conduct of the officer making the sale . . . or to the conduct of the purchaser participating in the attempt to stifle competition or affected with notice thereof. . . ." *Appeal of Paslay,* 230 S.C. 55, 61, 94 S.E.2d 57, 59–60 (1956) (quoting *Ex parte Cooley,* 69 S.C. 143, 155, 48 S.E. 92, 96 (1904)). If neither the officer making the sale nor the purchaser contributed to the mistake of a party intending to bid higher, and the sale was fair and regularly conducted, simply because a party intended to bid higher, but neglected to do so, or was prevented by a mistake, is not a sufficient ground for setting aside a judicial sale. *Id.* at 154, 48 S.E. at 95; *see also Howell,* 208 S.C. at 33, 37 S.E.2d at 276 (declining to set aside the sale where a plan to bid did not succeed, but its failure was due to no fault of the master, auctioneer, the winning bidder or any other person connected with the sale, but was due to the negligence or fault of the party complaining).

In *Appeal of Paslay,* 230 S.C. 55, 94 S.E.2d at 57 (1956), the appellant alleged he had been prepared to bid at least $1,000.00 for property that sold for $450.00. The appellant instructed his lawyer to bid as such; however, the attorney was prevented from attending the sale as a result of the mechanical failure of his automobile. Noting counsel's explanation for his absence did not involve the actions of the selling officer, the South Carolina Supreme Court found the circumstances did not warrant vitiating the sale. *Id.* at 58, 94 S.E.2d at 58.

In *Spillers,* where the officer conducting the sale deviated from the usual sales procedure, the Supreme Court found the claim of misapprehension and excusable mistake on the part of counsel was in relation to the conduct of the sale and accordingly affirmed the setting aside of the sale. 233 S.C. 99, 105, 103 S.E.2d 759, 762 (1958). Distinguishing the facts of *Spillers* and *Paslay,* the court enunciated:

Distinction between that case and this is readily apparent. There no factor was present for which the selling officer had any responsibility; here the claim of misapprehension and excusable mistake on the part of counsel was in relation to the conduct of the sale.

. . .

In the case at bar Judge McGowan concluded from all of the evidence that the auctioneer had probably been over-hasty in knocking the property down to Mr. Spillers, and that under all the circumstances Mr. Clay's misapprehension of the final bid was excusable. These conclusions, together with his further finding that the property is worth much more than the price at which it was knocked down, that the parties to the cause were ready to bid a much higher figure, and that to permit completion of the sale at the price bid by Mr. Spillers would result in injustice to the partitioners, are not without support in the evidence.

*Id.* at 105, 103 S.E.2d at 762.

In the case *sub judice,* neither the officer presiding over the sale, Sanders, nor any other buyer made a mistake or perpetrated a fraud. The Bank demanded the deficiency judgment and therefore knew, or should have known, the sale would follow the deficiency procedure. Hook, whose actions

are imputable to the Bank, testified the mistake was solely her own. Assuming, *arguendo,* the selling price to Sanders was inadequate (but not so great as to shock the conscience), there are simply no factors attributable to the selling officer or successful bidder or other circumstances warranting the sale be set aside. Accordingly, the master correctly found the judicial sale should not be vitiated.

## II. Inadequacy of Price as to Shock the Conscience

The Bank argues the master incorrectly determined the value of the Property and therefore erred in finding the final bid was not so inadequate as to shock the conscience of the court because. We disagree.

Although the master found the Property to be worth $550,000.00, the Bank urged the master to set the value of the Property at $750,000.00. We find no error in the master's valuation. When offered at private auction, the property did not receive a bid remotely close to its $650,000.00 reserve price. Real estate agent Johnson tried for over half a year to sell the property at $750,000.00 and was still unable to sell the property when the Rouses dropped the listing price to $600,000.00. Even the Bank's own witnesses agree there were copious factors negatively affecting the Property's curb appeal and value. Testimony revealed the house is not in a particularly attractive location but is on a busy thoroughfare with commercial property next door and a trailer across the street, has no yard, remains unfinished, and is over-sized for the area it is located. Chris Johnson, an assistant vice-president at the Bank asseverated, "I said bid up to $550,00.00 based on what I consider the value to be at the time and on subsequent events, the fact that it hadn't yet sold and the list price was down to $600,000.00, so given that situation, I thought if a third party bid that [on] sale, that was a number that we were willing to let the property go." The evidence luculently supports the master's finding that the Property value be set at $550,000.00.

Even assuming the master should have determined the value of the Property to be $750,000.00, Sanders still paid a third of the value. While this may have been inadequate, it is not so grossly inadequate as to shock the conscience of the court.

South Carolina has not established a bright line rule for what percentage the sale value must be with respect to the actual value in order to shock the conscience of the court. However, a search of South Carolina jurisprudence reveals only when judicial sales are for less than ten percent of a property's actual value, have our courts consistently held the discrepancy to shock conscience of the court. In *Investors Sav. Bank v. Phelps*, 303 S.C. 15, 19, 397 S.E.2d 780, 782 (Ct.App.1990), this court affirmed the master's decision to set aside a sale where the bid of $510.00 was slightly more than one percent of the original amount of the loan and mortgage. We found that even if the property was worth only a fourth of the amount loaned on it four and a half years earlier, the bid was still only four percent of the value. *Id.* The court noted New York courts consistently hold foreclosure sale bids of less than ten percent of the value are unconscionably low. *Id.* (citing *Polish Nat'l Alliance of Brooklyn, U.S.A. v. White Eagle Hall Co.*, 98 A.D.2d 400, 470 N.Y.S.2d 642, 649 (N.Y.App.Div.1983) ("[F]oreclosure sales at prices below 10% of value have consistently been held unconscionably low in this State....")). In *Poole v. Jefferson Standard Life Ins. Co.*, 174 S.C. 150, 158, 177 S.E. 24, 28 (1934), the South Carolina Supreme Court set aside a foreclosure sale based, in part, on the fact that the high bid was $500.00 for property worth more than $5,000.00.

By comparison, in *Peoples Fed. Sav. & Loan Ass'n v. Graham*, 291 S.C. 178, 352 S.E.2d 511 (Ct.App.1987), this court found the sale price of $48,100.00 for property subsequently appraised at $73,000.00, was not so inadequate as to shock the conscience of the court and affirmed the trial court's decision not to set aside the sale. The court stated, "Although the sale price in the instant case was less than the value of the property, it was not so grossly inadequate as to shock...." *Id.* at 182, 352 S.E.2d at 513.

In the present case, the Property would have to be worth more than $2,460,000.00 for the sale price to be less than ten percent of the actual value. None of the Bank's experts set its worth at more than $900,000.00. Taking the value the Bank asserts the master should have placed on the Property, $750,000.00, the sale price was approximately a third of the

actual value. Accordingly, the inadequacy of the price was not so gross as to shock the court's conscience.

## *CONCLUSION*

We hold the master did not err in determining the sale should not be set aside. The sale price was less than the value of the Property because of a mistake by the Bank's counsel, not as a result of conduct by an official conducting the sale or another bidding party. The master correctly determined the inadequacy of the sale was not so gross as to shock the conscience of the court. Therefore, the order of the master is

**AFFIRMED.**

KITTREDGE and SHORT, JJ., concur.