Curia, per O’Neall, J.
In this case, the zeal with which the defendant’s motion has been pressed upon the court, and our unfeigned respect for and confidence in the attorney arguing for him, have induced a greater consideration of this case than its merits otherwise would have received; for it does seem to me a very plain case, and in three different ways the plaintiff shewed a right to recover, paramount to any other title presented to us.
1st. As to the construction of the sheriff’s deed. If it be true, (as I suppose it is) that the sheriff’s advertisement was in evidence on the trial below, (although I have neither note nor recollection of it) it cannot help the defendant, for two reasons : 1st. The description in it is not at war with that contained in the deed; it describes the property to be sold as “ the dwelling house, land and buildings belonging to Neilson’s ferry on Santee, and that part of the ferry comprehended in Charleston district.” What was the land belonging to Neilson’s ferry ? This the advertisement does not shew. It is to be ascertained by proof aliunde; another deed may as well fix it, as any other proof. The dwelling house and much of the cleared land were South and West of Eutaw creek; and for anything which the advertisement discloses, there might have been one thousand, as well as seventy acres, attached to the ferry. But 2d. After a lapse of fifty years, if there were any discrepancy between the deed and the advertisement, or even the levy, we would not permit it to defeat the deed, but would presume omnia rite acta, so that the whole question is upon the construction of the deed of the sheriff. It describes the land sold and conveyed as “ all that plantation or tract of land, situate, lying and being in the district of Charleston, containing seventy acres by *486 computation, be the same more or less, butting and bounding to the North on Santee river, Westwardly on lands of William R. Davis, James Sinkler, and on the line dividing Orangeburg and Charleston districts; South on lands of James Sinkler, and comprehending all the lands in Charleston district belonging to the estate of Jared Neil-son, and known as the Southern part of Neilson’s ferry.” Let this be read to any one, and ask what land is conveyed 1 The answer will be at once, all Jared Neilson’s land in Charleston district, lying within the boundaries indicated ; and it is only when an ingenius mind tasks itself to start up objections to it, that any doubt can be raised. ■ It cannot be that quantity can govern, for it is conceded that much more, unquestionably, passes under the deed. Nor can the description “known as the Southern part of Neil-son’s ferry,” control the more comprehensive description in the deed ; for we know it was intended to sell the southern landing of Neilson’s ferry, and the land attached and enjoyed with it by Mr. Neilson, What that was, would be the difficulty. It was not the fifty acres, or perhaps more, lying between Eutaw creek and Santee river, for the dwelling house, and much of the cultivated land, was outside of these boundaries. That they usually passed as incident to the ferry, is manifest, from the' description and reservation in- the first lease from Gourdin to Richbourg, in 1798.
But it is supposed that the quantity, seventy acres, more or less, is the first certainty in' the deed ; and that being false, according to Dowtie’s case, 3 Rep. 9, the whole description is bad, and nothing passes. In Dowtie’s case the description was, all the grantor’s “ tenements and cottages situate in the parish of St. Andrew, in Holborn, in the occupation and tenure of Win. Gardiner.” The grantor had nothing in St. Andrew, but he had five tenements in St. Sepulchre, in the occupation of Wm. Gardiner. Dowiie’s case was, I think, rightly decided, but not for the very technical reason, that the first part of the description was bad, and, therefore, the second part of the description, although true, could convey nothing — but simply because, taking the whole description together, it was not at all cer *487 tain the grantor intended to convey the tenements in St. Sepulchre. But take it upon Lord Coke’s distinction, that the first certainty being bad, the whole description is bad, still I do not think the defendant can be helped ; for I deny that quantity has ever been regarded as a certainty in a deed. It is altogether too uncertain a matter to have such an effect. It depends upon measurement, calculation, and is often, as in this case, (<! by computation”) a mere guess; and hence has been universally regarded as too indefinite to control matters susceptible of more certainty as boundaries. The place where land lies, as in Charleston district, may indeed be regarded as a certainty; and under such a description, it is possible land in Sumter might not pass, though an extreme case of description might even overrule the locality given by the deed. We have so many cases referring to boundaries, and giving them preference to quantity, that it cannot be necessary to do more than to refer to Fulwood vs, Graham, 1 Rich. 491, and Barksdale vs. Toomer, Harp. 290. Take the boundaries given by the deed, and there is no doubt all the land covered by the verdict is covered by the deed; so there is nothing wrong here.
But the defendant had the full benefit of the discrepancy in the description ; for although I told the jury that the description in the sheriff’s deed would cover the land, yet, if they thought the smallness of the quantity mentioned in the deed, and the other circumstances relied on in the defence, rendered the description so uncertain that they could not indentify the land conveyed ; that then the defendant was entitled to the benefit of this doubt, and on it they might find for him, unless there was something else in the case which would prevent them. This, I am sure, was giving the defendant all he could ask, and perhaps a little more than he was entitled to.
2d. But laying the sheriff’s deed out of the question, the plaintiff could stand on Richbourg’s deed alone, and recover ; for as soon as the grant to Farrar was shewn, and the conveyance to Jared Neilson, (deed) the plaintiff had a right to say, Jared Neilson, Jr., who, in 1806, entered and claimed as devisee or heir, was paid for his claim, and *488 abandoned the possession to Richbourg, the tenant of the devisor of the plaintiff; and that Richbourg, in 1810, conveyed to him the land in dispute; and that he and his de-visee, the plaintiff, have been in possession of part of the land ever since, and these facts would be enough to presume a deed from Jared Neilson, Jr. But it is unnecessary to resort to that, for on the plaintiff’s producing the deed from Richbourg to his devisor, and proving, as he did, that he, (Richbourg,) as the tenant of the devisoi, held possession of part of the Farrar tract for five years before 1824, it made his title perfect against all who were sui juris, and every one is so regarded until the contrary appears. Such a possession, in reference to color of title, operates as a conveyance from the person last'seized according to the proper title,' to the person in possession. That Richbourg’s deed was a very sufficient color, is abundantly shewn by referring to Read vs. Eifert, 1 N. & McC. 380. Judge Smith, who was a very experienced land lawyer, speaking of the words in the statute of limitations, says, “ the word titles is a technical word also, as well as the word possessions, with which it is connected. And the popular, as well as legal, definition of it is, the evidence of the right by which a party claims to be the owner of real or personal estate ; and the word possessions must mean such occupancy as the whole thing is capable of under that title. That is, if a person has a deed of conveyance for one hundred acres of land, this title deed is evidence of his right; and if he is in actual possession of ten acres within the boundaries described in that conveyance, he is legally in possession of the whole, because this is the only possession of which the thing is susceptible.”
Bd. The defendant is, however, in another way, cut off from a verdict. On the 9th of October, 1816, he, together with Thomas Lehre, Sr., leased from the plaintiff’s devisor, for ten years, Neilson’s ferry, and about two hundred acres, bounded by Santee river, North, John N. Davis, West, East by Eutaw creek, and South by a line parallel with the river. What land is covered by this description 1 A part of the Farrar grant, it is conceded, is covered by it. *489 The defendant, under this lease, held and cultivated a part of the very land which he now claims, for two years. Although the lease may not have the effect of an estoppel, yet it is such an admission of the plaintiff’s title as will cast upon the defendant the burden of shewing a paramount title. This he has failed to do. The motion is dismissed.
Richardson, Evans, Butler, Wardlaw and Frost, JJ. concurred.