76

■■■■■■■■■■■■■■■■■■■■■■■■■

0694

Sophia Johannah Dierks YARBROUGH, Respondent v. W. W. COLLINS, Jr., Lynn Webster Collins, The Bank of Beaufort, and Earl L. Orr; Alice Bryan, Marion Fripp, Vivian Fripp, E. Kenneth Baker, Georgia Bryan, the heirs at law of Simon Walker, William H. Boyd, if living and if not living, then to the heirs at law and distributees of William H. Boyd, Trust Company of Savannah, Clara Martin, such heirs at law of Paris Myers, other than Susie Myers Miller, Charles Myers, Elijah Myers, and Josh Myers, as may be living, and all other persons unknown having or claiming any right, title, estate, or interest in or lien upon the real property described in the complaint, being designated collectively as John Doe and Richard Roe, including any heirs, distributees or devisees or any unknown defendants who may now be deceased and including all minors, persons in the military services, insane persons and all other persons under disability who have or may have or claim to have any right, title or interest in or lien upon the real property, described in the complaint herein, Defendants, of whom W. W. Collins, Jr., Lynn Webster Collins, and Earl L. Orr are, Appellants.

(348 S. E. (2d) 194)

Court of Appeals

*Joseph R. Barker,* of *Bethea, Jordan & Griffin, P.A.,* Hilton Head Island, *for appellants.*

*Levin, Sams & Grimsley, P.A.,* Beaufort, *for respondent.*

Heard Feb. 26, 1986.

Decided Sept. 8, 1986.

CURETON, Judge:

Respondent Sophia Johannah Dierks Yarbrough (Yarbrough), a resident of Savannah, Georgia, brought this action to quiet title to a 23.77 acre tract of land on Daufuskie Island, South Carolina. The appellants Woodrow W. Collins, Jr., Lynn Webster Collins and Earl T. Orr (appellants) claim that they, not Yarbrough, own the 10 acre southern portion of this tract. The special referee recommended that the circuit court issue a decree quieting title to the entire tract in Yarbrough. The circuit court adopted the recommendations of the referee. Appellants appeal. We affirm.

The appellants raise four issues on appeal: (1) whether the record of appellants' predecessors-in-interest prior quiet ti-

tle action was put in evidence; (2) whether the prior judgment has a res judicata effect on this action; (3) whether the parties' deeds were ambiguous so as to require the court to resort to rules of construction to determine the location and boundaries of the property in question; and (4) whether the circuit court erred in confirming aspects of the referee's report concerning misstatements of testimony and matters not of record.

The parties' chains of title are not particularly complicated in terms of the identity of the purported land owners. However, the land descriptions in the conveyances present the problem underlying this controversy. The parties' chains of title and other salient facts are set forth below:

### Yarbrough's Chain of Title

1. December 21, 1876 — William F. Chaplin, trustee of the city of Savannah conveyed 10 acres more or less of "Prospect Hill" situated on the southwest part of Daufuskie Island to Paris Myers.
2. March 24, 1884 — Isabella Waples conveyed about 7 acres of the Benjes Point Plantation to Paris Myers.
3. May 28, 1951 — Paris Myers' heirs deeded "seventeen (17) acres, more or less" to Fred H. Dierks.
4. September 24, 1961 — Dierks conveyed "twelve (12) acres, more or less" to Yarbrough. The property conveyed is described as lot Number 37 on the Beaufort County "official map" pages 24 and 26. The description of the tract in Dierks' deed to Yarbrough makes reference to the lots and marshlands which surround the entire 23.77 acre tract. Mary Catherine Myers Dierks, Dierks' wife, executed a renunciation of dower in connection with Dierks' deed to their daughter, Yarbrough.

### Appellants' Chain of Title

1. January 29, 1878 — William F. Chaplin filed a deed concerning a 10 acre parcel to Paris Myers.
2. May 28, 1951 — Paris Myers' heirs deeded a 17 acre tract to Fred Dierks.
3. December 10, 1971 — Fred Dierks died testate leaving all of his real and personal property to his wife, Mary Dierks.

4. May 31, 1974 — Mary Dierks deeded "five (5) acres more or less" to Marie P. Viens (Viens) and Myra Ann Richardson (Richardson). The land conveyed is described as "being shown on Beaufort County Tax Map Number 26 as tract Number 13." This deed states that the land conveyed is a part of what was formerly known as Prospect Hill and the same land conveyed to Fred Dierks by Myers' heirs in 1951; that the tract was purchased "as is" without benefit of title search; and that "owners agree to help in clearing action." In connection with this transaction Mary Dierks accepted a purchase money mortgage from Viens and Richardson.

5. October 24, 1974 — Viens conveyed her interest in the land to Richardson. The tract described is a *five* acre parcel designated as tract Number 13 on Tax Map 26. The tract is also described as a portion of the land devised to Mary Dierks by Fred Dierks' will. This will makes Yarbrough his executrix and describes her as being a resident "of Savannah, Chatham County, Georgia."

6. October 17, 1979 — Myra Ann Richardson instituted an action to quiet title to *ten* acres of land. The defendants in this action including Yarbrough were served by publication in the Beaufort Gazette pursuant to an order of publication based upon an affidavit stating that the parties are within the jurisdiction of the court and that the plaintiff (Richardson) could not ascertain the whereabouts of the defendants after due diligence. None of the defendants filed an answer. Thereafter, the court entered a default judgment dated September 15, 1980 and granted Richardson the relief for which she had prayed. Although her deed from Mary Dierks referred to *five* acres of land, title was quieted to ten acres. Moreover, while the deed from Mary Dierks referred to a parcel described as Lot Number 13 on Tax Map 26, the court quieted title in her to a lot Number 39 on Tax Map 24 which is a *two* acre parcel.

7. November 24, 1980 — Richardson deeded about half of the 10 acre parcel to W. W. Collins and Lynn W. Collins, appellants herein.

8. February 11, 1981 — Richardson acquired a mortgage satisfaction from Yarbrough as sole heir and administrator of Mary Dierks' estate which stated that Yarbrough had received full payment for the land which her mother had sold to Richardson and Viens in 1974.

9. March 3, 1981 — Richardson deeded the remaining half of the 10 acre parcel to Ned E. Gilleland.

10. June 10, 1981 — Ned E. Gilleland conveyed his parcel to Earl L. Orr, appellant herein.

## I.
### Judicial Notice

In determining that the 1980 default judgment was not res judicata, the circuit court found that the judgment roll was never introduced into evidence and concluded that the referee improperly took judicial notice of the judgment. Our review of the exceptions to the referee's report show no exception was taken to the referee's holding regarding judicial notice. A referee's findings of fact and conclusions of law not excepted to by any party are binding upon the reviewing court. *McCullough v. Urquhart*, 248 S. C. 348, 149 S. E. (2d) 909, 910 (1966) (referee's findings of fact are conclusive unless excepted to); *Kerr v. City of Columbia*, 232 S. C. 405, 102 S. E. (2d) 364 (1958) (conclusions of master if not challenged by exceptions become the law of the case). *See* Section 15-31-100, Code of Laws of South Carolina, 1976, and cases collected thereunder. Accordingly, the circuit court's reversing a finding not excepted to was erroneous, but this error has no effect upon the result reached by the circuit court.

## II.
### Res Judicata

The appellants argue that if Yarbrough wants to contest the 1980 judgment, she must do so by motion to vacate the judgment. During oral argument appellants acknowledged that prior judgments are subject to collateral attack only if they have been obtained by fraud or if a jurisdictional defect exists. We find that Richardson's failure to follow the proper mode of acquiring jurisdiction over Yarbrough ren-

dered the resulting judgment void and therefore subject to collateral attack. "Where a statute prescribes a mode of acquiring jurisdiction, that mode must be followed or the proceedings and resulting judgment will be null and void and the judgment subject to collateral attack." 20 Am. Jur. (2d) *Courts* Section 84 at 455 (1965). *See* 46 Am. Jur. (2d) *Judgments* Section 657 at 814 (1969) ("If a prescribed mode of procedure for acquiring jurisdiction is not followed, the resulting judgment is subject to collateral attack."); 49 C. J. S. *Judgments* Section 404 (1947) ("a default judgment, rendered by a court not having jurisdiction, like any other void judgment, is subject to collateral attack at any time ... where the record itself in such case discloses the infirmity.").

It has long been held that an unreversed judgment cannot be contradicted by matters outside the record. *Edgerton v. Muse*, 13 S. C. Eq. (Dud. Eq.) 179 (1838). A judgment can be impeached, however, in a collateral proceeding upon proof of fraud or lack of jurisdiction. *Riker v. Vaughan*, 23 S. C. 187 (1885). A judgment is void as to parties not within the jurisdiction of the court and when this jurisdictional defect appears on the face of the record, the judgment may be disregarded as a nullity in any proceeding, direct or collateral. *Turner v. Malone*, 24 S. C. 398 (1886).

A defect in service of process of publication is jurisdictional rendering any judgment or order obtained thereby void. *Fountain v. Patrick*, 44 N. C. App. 584, 261 S. E. (2d) 514, 516 (1980); *Peoples National Bank of Greenville v. Manos Brothers, Inc.*, 266 S. C. 257, 84 S. E. (2d) 857, 867 (1954) (requirements of Georgia statute concerning constructive service are jurisdictional and failure to comply with them renders the judgment void). A judgment by default granted without proper service of process upon the defendant is void where the defendant does not otherwise waive service of process. *Gaddis v. Dyer Lumber Co.*, 168 Ga. App. 334, 308 S. E. (2d) 852, 853 (1983).

We hold that insofar as Yarbrough is concerned the judgment rendered in the first quiet title action is a nullity because of Richardson's failure to comply with state law concerning service by publication. According to

Section 15-9-710, Code of Laws of South Carolina, 1976, a defendant may be served by publication if he has property located within the state and the court has jurisdiction over such property. This section also requires the plaintiff seeking to serve a party by publication to submit an affidavit to the court showing "due diligence" in attempting to locate the defendant within the state.

Here, the affidavit seeking the order of publication does not set forth any facts showing that the plaintiff exercised due diligence in locating Yarbrough within the state of South Carolina. *See Fountain v. Patrick*, 44 N. C. App. 585, 261 S. E. (2d) 514, 516 (1980) (trial court properly set aside default judgments against defendants upon a finding of insufficient service of process where evidence showed plaintiff gave notice by publication without first exercising due diligence in ascertaining addresses for defendants since plaintiff had insurance accident reports with addresses on them for each defendant). *Cf. Ingle v. Whitlock*, 282 S. C. 391, 318 S. E. (2d) 368 (1984) (service by publication upheld when affidavit attached to petition for order permitting service by publication showed unsuccessful efforts to find the defendant, i.e. attempts of professional process server, mail carriers contacted, relatives of defendant contacted, electricity and water company contacted etc.). The affidavit merely states "Plaintiff, after due diligence is unable to ascertain the whereabouts of any of the named defendants ... [who] are within the jurisdiction of this court." Thereafter, the clerk of court issued an order of publication wherein it was stated that the order was issued after reading and consideration of the affidavit. Notwithstanding this fact, the order included facts (e.g. that some defendants resided out of state) which did not appear in the affidavit and the conclusory statement that Richardson "cannot, with reasonable diligence ascertain the identities or the addresses or the whereabouts of the defendants."

Thus, there are critical discrepancies and omissions on the face of these documents. The affidavit states that the court has jurisdiction over all the parties while the order states that some defendants are nonresidents. A glaring omission in the affidavit is the absence of· *any facts* which demonstrate that the plaintiff attempted to locate the defendants

within the state. All the affidavit provides is a conclusory statement that due diligence had been exercised. Courts have generally held it "insufficient merely to aver that after due diligence the defendant cannot be found within the state; the acts constituting due diligence should be recited." 62 Am. Jur. (2d) *Process* Section 117 (1972); *see Citizens & Southern Bank v. Auer*, 514 F. Supp. 631 (E.D. Tenn. 1977) (Mere allegation in affidavit that defendants are non-residents of state and that their whereabouts are presently unknown does not show diligence has been exercised by plaintiff in attempting to determine present whereabouts of defendants); *Robinson v. Cornelius*, 377 So. (2d) 776 (Fla. App. 1979); *cf. Downey State Bank v. Major-Blakeney Corp.*, 545 P. (2d) 507 (Utah 1976) *rev'd on other grounds, Management Services Corp. v. Development Associates*, 617 P. (2d) 406 (Utah 1980) (Although affidavit of jurisdictional facts which merely states conclusions as to inquiry and diligence is not sufficient, an affidavit setting forth facts upon which court could base judgment was sufficient where affidavit showed that there had been a bona fide attempt to serve defendant at only address known to or reasonably obtainable by plaintiff).

### III.
### Land Description

Appellants contend the referee and trial judge erred as a matter of law when they determined that the deed to Yarbrough was unambiguous. We agree. An ambiguous instrument "is one capable of being understood in more ways than just one, or an agreement unclear in meaning because it expresses its purpose in an indefinite manner." *Klutts Resort Realty v. Down'Round Development*, 268 S. C. 80, 232 S. E. (2d) 20, 25 (1977). Clearly there is a conflict in the Yarbrough deed between the acreage sought to be conveyed and the area of land conveyed as set out in the metes and bounds. We thus hold that the deed is ambiguous.

In construing an ambiguous deed, intention of grantor must be ascertained and effectuated, unless that intention contravenes some well-settled rule of law or public policy. *Wyburn v. Smith*, 270 S. C. 38, 239 S. E. (2d) 890 (1977).

Our review of the record finds support for the holding that Yarbrough is the owner of the disputed 23.77 acre tract. Fred Dierks' deed to Yarbrough in 1961 describes the tract conveyed with reference to the land which bounded the 23.77 acre tract. In Dierks' conveyance to Yarbrough he erroneously stated that the tract contained twelve acres apparently relying upon a reference to twelve acres which appeared on the "official maps of Beaufort County" which he used to formulate a description of the land conveyed. It is an elementary legal precept that boundaries govern acreage and inaccuracies relating to the area of a tract are generally immaterial. *Brownlee v. Miller*, 208 S. C. 252, 260, 37 S. E. (2d) 658, 661 (1946). *Cf. Gourdin v. Davis*, 31 S.C.L. (2 Rich.) 481 (1846) (recitals of quantity, following a particular description are merely descriptive and do not determine the quantity sold). Dierks is deemed to know the boundaries of his land. Rules of construction would require us to disregard the reference to twelve acres in the deed and give effect to the area description established by clear boundaries.

The appellants argue that if the ten acre parcel over which they assert ownership is removed from the 23.77 acre tract, Yarbrough would still retain twelve acres as called for in her deed. They claim that such an order would cause her to "lose nothing." We disagree. Her loss would be the very object that appellants seek to gain. On this record, we cannot find that they own the 10 acre parcel which they now seek. Their predecessors-in-title claim of ownership arose from a purchase from Mary Dierks. Viens and Richardson were aware that there was a problem with the title that they obtained from Mary Dierks. The face of the deed to them refers to a purchase of property "as is" and it includes a pledge to provide assistance in clearing title to the property conveyed, i.e. lot Number 13 on Tax Map 26.

## IV.
### Special Referee's Findings

Our review of the record indicates that the special referee's report contains several erroneous statements regarding the evidence presented. Review of these statements lead us to conclude, however, as did the circuit court, that they

are insignificant errors. We hold these errors to be harmless and do not undermine in any way the lay testimony, expert testimony, and documentary evidence which supports Yarbrough's claim to ownership of the disputed land.

The judgment of the circuit court is affirmed and the appellants' petition for rehearing is hereby denied.

Affirmed.

GOOLSBY, J., and LITTLEJOHN, Acting J., concur.