## NORMAN v. NORMAN.

1. A party mortgaged all his land in one county, and subsequently judgments were entered against him, after which a lot of land in another county was purchased and deed taken by his wife, who mortgaged this lot as additional security for the same mortgage debt. *Held*, that neither the judgment creditors, nor the purchaser under these judgments, had the right to require the mortgage creditor to proceed first against this lot of land in another county for the benefit of their judgment liens.

2. A purchaser at sheriff's sale buys the land subject to the lien of a mortgage older than the judgments under which the sheriff sold.

3. A purchaser, mistakenly believing that a judgment, under which he purchased at sheriff's sale, was older than a mortgage lien, cannot, therefore, be relieved of his bid upon the ground of mistake of fact—the mortgage being of record. Nor can he be relieved upon the ground of mistake of law.

4. But the purchaser having bid the full unencumbered value of the property, has an equity, that the surplus proceeds of the sale, after satisfying all the judgments, should be applied to the mortgage debt. MR. CHIEF JUSTICE SIMPSON *dissenting*.

Before COTHRAN, J., Union, March, 1884.

The opinion fully states the case.

*Mr. David Johnson, jr.*, for plaintiff.

The plaintiff should not be required to comply with his bid, because it was made under a gross mistake and misapprehension of law and fact. 2 *McCord Ch.*, 461; 2 *Bail.*, 623; 1 *Hill Ch.*, 250; *Bail. Eq.*, 505. These cases are not overruled by 4 *Rich. Eq.*, 353, and 20 *S. C.*, 317. See, too, 4 *Dana*, 301; 3 *B. Mon.*, 510; 21 *Conn.*, 139; 7 *Ga.*, 64; 6 *Harr. & J.*, 500; 33 *Am. Rep.*, 471; 15 *Id.*, 184. The plaintiff not having complied with his bid, the court should not order a compliance in favor of the judgment debtor. *Story Eq.*, § 769; *Pom. Eq. Jur.*, §§ 842, 844, 860, 861, 1404, 1405; *Kerr Fr. & M.*, 411; 57 *N. Y.*, 155; 7 *Wait Act. & Def.*, 330; 12 *Ves.*, 33. The Wellford lot should be primarily exhausted by the mortgage. *Speer Eq.*, 556; 17 *S. C.*, 503.

*Mr. J. S. R. Thomson,* contra.

December 6, 1886. The opinion of the court was delivered by MR. JUSTICE McGOWAN. J. Fincher Norman, William H. Norman, Elizabeth Hollis, and James T. Bomar were tenants in common of a tract of land in Union County, known as the old "Jason Norman tract," the interest of the parties being as follows: J. Fincher Norman, one-third; W. H. Norman, one-third; Elizabeth A. Hollis, one-sixth; and James T. Bomar, one-sixth. On December 1, 1877, James T. Bomar mortgaged his one-sixth to Layton and Gregory for $1,041.30, and the mortgage was duly recorded. A part of the money borrowed by James T. Bomar from Layton and Gregory was used in buying the Nesbitt lands, which were afterwards exchanged for a lot in the town of Wellford, Spartanburg County, and at the request of James T. Bomar, the title was made to Mary M. Bomar, wife of the said James T., and she thereupon, on February 12, 1883, executed a mortgage of the same to Layton and Gregory as additional security for the aforesaid debt, to the extent of $445.31. James T. Layton alone is now the owner of the debt and both the mortgages to secure it. The debt on February 27, 1885, when the master made his report, amounted to $863.81.

After the mortgage of his interest in the Norman land was executed by James T. Bomar, but prior to that of the Wellford lot by Mrs. Bomar, three judgments were obtained against James T. Bomar, as follows: Nicholson *v.* Bomar, for $71.85, June 11, 1879; Minter *v.* Bomar, for $329.36, June 27, 1879; and Foster & Wilkins *v.* Bomar, for $171.08, July 26, 1879. Under these judgments the interest of James T. Bomar in the Norman land was levied and sold by the sheriff of Union County on salesday of December, 1883. At that time the judgment of Nicholson had been assigned to the plaintiff, and at the sheriff's sale he bid off the interest of Bomar at the price of $1,115. But subsequently, being informed that he had bought only the equity of redemption of the defendant in execution, subject to the aforesaid mortgage of Layton, he refused to comply with his bid, and instituted these proceedings primarily for partition, but impleading also the mortgagee (Layton) of the interest of James T. Bomar

and Mary M. Bomar, who executed the second additional mort-
gage of the Wellford lot in Spartanburg; and praying that he
should be relieved from his bid at sheriff's sale, on the ground
that "he believed the judgment of Nicholson was senior to the
mortgage, and he thought a clear title would pass by the sheriff's
deed." He also insisted that the lot in Wellford, covered by the
second mortgage executed by Mrs. Bomar, should be first sold
and the proceeds applied to the mortgage debt, to the relief of
the share of James T. in the Norman land covered by the first
mortgage given by James T. Bomar.

The mortgage creditor, James T. Layton, answered, praying
the foreclosure of both mortgages. James T. Bomar insisted that
the plaintiff should be required to pay his bid to the sheriff for
the interest sold. Mary M. Bomar, living in Spartanburg on the
Wellford lot, denied that she was a proper party to a proceeding
to foreclose the mortgage in Union, and also that the plaintiff had
any cause of action against her, and that his complaint as against
her should be dismissed. But if she were properly before the court,
the mortgage against her could not properly be enforced until the
primary security, that against her husband, was first exhausted.

It was referred to the master, James Munro, Esq., to report
the testimony, together with his conclusions thereon. He reported
the facts, relieved the plaintiff from his bid at sheriff's sale upon
the ground of "mistake and misapprehension," and found that
the lot at Wellford in Spartanburg, now occupied by the defen-
dant, Mary M. Bomar, should be first sold upon the ground that
the plaintiff, as execution creditor, having only a lien upon the
interest of Bomar in the Norman lands, and the mortgagee, Lay-
ton, having two securities for the same debt, a mortgage upon the
Norman land, and also upon the Wellford lot, the said plaintiff
has an equity to require the mortgagee to exhaust the Wellford
lot to the relief of the Norman land. Upon exceptions to this
report, the cause came on to be heard by Judge Cothran, who
held that Mrs. Mary M. Bomar was "not a proper party in this
suit for partition, she having no interest in the subject-matter,"
and dismissed the complaint as to her. He also held that "the
share of the defendant, James T. Bomar, in the land lying in
Union County is first liable for the Layton mortgage. It had

been purchased by J. Fincher Norman, and the satisfaction of the mortgage out of said share would be with the property of said Norman, and entitles him clearly to the right of subrogation against James T. Bomar, so far as that he should recover from said James T. Bomar the amount paid for his benefit," &c. From this decree the plaintiff, J. Fincher Norman, and one of the defendants, James T. Bomar, appeal.

PLAINTIFF'S EXCEPTIONS.—"Because his honor erred in finding: 1. That Mary M. Bomar's mortgage of the lot in Spartanburg was additional security for the debt due by James T. Bomar, and that the agreement at the time was that said lot should only be liable in case the mortgaged lands in Union should not prove sufficient to pay the debt.

"2. That the judgments referred to in said decree were obtained subsequently to the mortgage of Mary M. Bomar.

"3. That Mary M. Bomar 'only pledged her property upon a condition, which has not been performed.'

"4. That Mary M. Bomar is not a proper party to the action.

"5. That the interest in the land, formerly belonging to Bomar, be first applied, as far as necessary, to the payment of the mortgage debt.

"Because his honor should have held:

"6. That the debt due to Layton by Mary M. Bomar was a part of the same debt due by James T. Bomar, or that James T. Bomar was surety only for the debt of Mary M. Bomar.

"7. That the mortgaged premises of Mary M. Bomar in Spartanburg should be sold, and the proceeds, so far as necessary to pay the amount of the mortgage debt, be applied to the payment of the mortgage of James T. Bomar to Layton, before any part of the proceeds of the Union lands should be applied thereto.

"8. That the evidence offered to prove the agreement between Layton and Mary M. Bomar, that the lands in Spartanburg should be liable only in case the lands in Union proved insufficient to pay the mortgage debt of James T. Bomar, was incompetent and irrelevant.

"9. That the alleged agreement (referred to in exception 8) was inoperative and void as to the plaintiff, a judgment creditor of James T. Bomar.

"10. That the bidding off of the interest of James T. Bomar in the Union lands by the plaintiff, at sheriff's sale, was done under such mistake and misapprehension of law and fact, that it was inoperative to change the rights of the parties."

Exceptions of James T. Bomar.—"1. That his honor erred in not holding that J. Fincher Norman was bound by his bid made at sheriff's sale of the property in dispute.

"2. In not holding as matter of fact, that J. Fincher Norman had full knowledge of the facts and law at the time of said sale, and was bound to comply with his bid.

"3. In not holding that J. Fincher Norman was the true and lawful purchaser at said sheriff's sale of the said James T. Bomar's interest in said land.

"4. In not holding that the master erred in overruling this defendant's exceptions to testimony, which was offered to show ignorance of law and fact on the part of J. Fincher Norman.

"5. In not holding that the master erred in allowing testimony to be introduced to show the alleged real value of the property bid off by J. Fincher Norman.

"6. In not holding that the defendant was improperly made a party to this action.

"7. In not dismissing the complaint with costs as against this defendant," &c.

First. As to the mortgage of the Spartanburg lot by Mrs. Bomar. Without going into the question, whether Mrs. Bomar could be made a party to this case in Union to foreclose a mortgage upon a lot in Spartanburg, upon which she resides, or as to the admissibility of evidence tending to show that when her mortgage was given, it was upon the condition that the land mortgaged for the same debt in Union should turn out to be insufficient security for the same debt, there can be no doubt whatever that the $445.31, secured by the second mortgage in Spartanburg, was part of the original debt secured by the Union mortgage of James T. Bomar, the whole of which debt was thereby acknowledged to be the debt of James T. Bomar. This original Union mortgage was the only one in existence when the judgments were obtained, and afterwards, at the instance of Layton and for the purpose of securing him in any event, the wife gave the Spartan-

burg mortgage. This was manifestly cumulative and secondary, and we do not see that either the original mortgagor or his judgment creditor, or the purchaser at sheriff's sale, has any such interest in that second mortgage as to make it discharge even *pro tanto* the original debt and mortgage given to secure it. The judgments under which the land was sold were recorded in Union against James T. and not Mary M. Bomar; and, besides, they were all older than the second mortgage, and the purchaser at the sheriff's sale took the property unencumbered by that mortgage. See *The State* v. *Laval*, 4 *McCord*, 342.

It may be possible that James T. Bomar made a voluntary gift to his wife of $445.30 of the money for which he gave his bond and mortgage to Layton, and that it was invested in the Spartanburg lot, the title being made to her; yet, upon that assumption, she had the right to mortgage the land, at least until the conveyance was set aside and the lot declared to be the property of James T. Bomar, which could not be done in this proceeding. Considering, then, Mrs. Bomar as a person distinct from her husband, her mortgage was not only secondary and subject to the older judgments, but given by a different person, and, therefore, not within the equity rule of a lien upon two funds or pieces of property of the same debtor. See *Pomeroy Equity Jurisprudence*, sections 642, 643, and 1414. We cannot say that the Circuit Judge committed error in dismissing the complaint as to Mrs. Bomar, without prejudice as to the rights which may exist as between her and James T. Layton.

Second. As to the bid of the plaintiff at the sheriff's sale under the judgments. It is well settled in this State that when land is sold under execution, there being upon it the lien of a senior mortgage not foreclosed, nothing is sold but what for convenience is called the equity of redemption; or, as it is said, "the purchaser buys subject to the senior lien." *Thayer* v. *Sheriff*, 2 *Bay*, 171; *Ex parte City Sheriff*, 1 *McCord*, 399; *Phillips* v. *Bond*, 2 *Id.*, 382; *McClure* v. *Mounce, Ibid.*, 424. So well is this established, that if the senior mortgagee purchase the land himself under junior judgments, his mortgage debt is thereby extinguished. *Trimmier* v. *Vise*, 17 *S. C.*, 499. Where the senior lien is that of a judgment instead of a mortgage, the rule

is different. · In that case the purchase money is applied to the liens according to their dates, and the purchaser takes good title to the property. But in the case of a senior mortgage without proceedings in foreclosure, there is no process in the hands of the sheriff, and, therefore, the bid is applied only to the executions, and the purchaser takes the property still subject to the mortgage lien—that is to say, he must pay his bid and the mortgage debt in addition.

It is easy to see that at such a sale one not familiar with this difference between the lien of a mortgage and a judgment might be misled into bidding the full value of the property, when only the equity of redemption was sold. The difference in the liens is not obvious to any but a lawyer, and it is urged here that the plaintiff bid off the interest of Bomar under a misapprehension, and, therefore, the court should relieve him from it:

*First,* on the ground of a mistake of fact. It is well known that there is no warranty at a sheriff's sale. There is here no allegation of misrepresentation or fraud; and we can conceive of no fact in the case, as to which there could be a mistake, except that as to the date of the senior mortgage. The evidence indicates that the purchaser knew of the mortgage and its date; but if he did not, it was mere ignorance upon a point as to which he might have informed himself by consulting the record. As was said in the case of *McClure* v. *Mounce, supra:* "It was argued that the purchaser, by this mode of proceeding, is taken in. He thought he was buying the fee. This is the common lot of purchasers at sheriff's sales. There were means offered to the purchaser, by which he could have known that the fee was not sold, or, at all events, to put him upon the inquiry, viz., the mortgage was recorded." ·

*Second.* It is, however, further urged that there was such a mistake of law as to entitle the plaintiff to relief from his bid. The general rule certainly is, that a contract cannot be vacated simply on the ground of ignorance of the law. *Ignorantia juris non excusat.* The exceptions to this common law rule are not only few in number, but upon close examination will be found to have in them something peculiar. It is true there are some cases in this State in which a distinction was drawn between mere

ignorance and mistake of law, and relief given in the cases considered as falling under the latter class of mistake of law. *Lowndes* v. *Chisolm*, 2 *McCord Ch.*, 464; *Lawrence* v. *Beaubien*, 2 *Bail.*, 623. But it seems to us that the distinction between mistake and mere ignorance of the law is very shadowy, or at least not always apparent, and to extend the doctrine to cases not clearly of that class would be to excuse mere ignorance of the law, and thus tend to open a wide door to perjury, to set afloat all rights, and in fact to arrest the operation of law.

In this case the plaintiff testified: "I knew that there was a mortgage, but I supposed I would not have to pay it. I thought the sheriff's deed would convey clear title to the land. I would not have made a bid if I had known it was subject to the prior lien of the mortgage. * * * I read the sheriff's advertisement of sale before buying; my profession is that of a physician; my mistake was clearly a mistake of law," &c. Doubtless he thought the sheriff's deed would convey clear title to the land, but he took no counsel, consulted no one, was in no way misinformed upon the subject, but acted from his own head. It seems to us that this was a case of mere ignorance, as distinguished from mistake. We can see nothing to distinguish it from its class. The rule as to the lien of a senior mortgage may tend to mislead, but it has been long established, and while it is retained as the law, the court must enforce it. To relieve the plaintiff upon the showing made, would be, in effect, to abrogate the rule, for we have little doubt that every purchaser at such a sale could and would make the same defence. Notwithstanding a strong sense of the hardship, we are constrained to hold that the bid of the plaintiff at the sheriff's sale cannot be disregarded. See *Keitt* v. *Andrews*, 4 *Rich. Eq.*, 353; *Cuningham* v. *Cuningham*, 20 *S. C.*, 317.

But this is a proceeding on the equity side of the court, in which Layton, the mortgagee, asks for the foreclosure of his mortgage, and Bomar, the mortgagor, claiming that, although the bid of the plaintiff is still executory, it was a valid agreement to purchase, prays that he may have specific performance of the same, and, all the parties being before the court, such decree may be made as will do complete justice. *Moss* v. *Bratton*, 5 *Rich.*

*Eq.*, 3.   The plaintiff must account for his bid of $1,115, but as he is now the owner of all the judgments, he may retain as much as would be necessary to pay them all in full.   The surplus of the bid must be paid, but, under the circumstances, and especially as the land at the sheriff's sale brought its full value as if unencumbered, we think Layton, the mortgagee, as against the mortgagor, Bomar, has an equity that it should be applied on the mortgage debt of Bomar; such equity, however, being limited to the case where it is clearly shown that the land brought its full unencumbered value at the sheriff's sale.   If, after such application, there should still remain a balance of the mortgage debt unpaid, that balance is a charge on the Bomar interest of the lands in the hands of the plaintiff purchaser.   If such balance is paid, the plaintiff to have in the partition his own third and the sixth that formerly belonged to Bomar.   But if such balance is not paid, the interest of Bomar purchased by the plaintiff to be sold in foreclosure of the mortgage for the payment of the same.

The judgment of this court is, that the judgment of the Circuit be modified so as to conform to the conclusions herein announced, and in all other respects affirmed.

MR. JUSTICE MCIVER concurred.

MR. CHIEF JUSTICE SIMPSON.   I think the proceeds of the sale of Bomar's interest in the Norman land should be applied to the judgments against Bomar, and if there be a surplus, this should belong to Bomar, the land being still subject to Layton's mortgage.   In the other points I concur.