732 S.E.2d 622

**ARROW BONDING COMPANY, Respondent,**

v.

**Jay Edward WARREN, Appellant.**

No. 27166.

Supreme Court of South Carolina.

Heard Feb. 7, 2012.

Decided Aug. 29, 2012.

Tara Dawn Shurling, of Columbia, for Appellant.

G. Murrell Smith, Jr., of Lee and Moise, of Sumter, for Respondent.

Justice PLEICONES.

Appellant (Warren) appeals an order denying his Rule 55(c) and Rule 60(b)(1), SCRCP motions, as well as his independent motion to set aside a judgment sale. On appeal, he contests only the denial of his motion to set aside. We affirm.

## FACTS

Warren is a state bail bondsman, and respondent is also in the bond business. Warren agreed to be responsible if a mutual client forfeited a surety bond issued by respondent. In October 2006, respondent obtained a $5,120.00 judgment

against Warren after the client forfeited. In August 2007, the clerk issued a Judgment Execution, and on September 19, 2007, the sheriff issued an Execution Account Statement. In this statement, he reported receiving a $1,000 payment from Warren, from which he deducted his $52.50 fee, leaving $947.50 to be applied against the debt. After deducting the $947.50 and adding the interest accrued as of September 19, 2007, Warren's judgment debt stood at $4,705.15.

In January 2008, respondent brought an action to foreclose its judgment lien. Warren did not answer, and on May 6, 2008, the clerk granted respondent's motions, ordering entry of the default against Warren, and referring the matter to the Master–in–Equity. On June 8, 2008, the Master issued an order foreclosing respondent's judgment lien and ordering a judicial sale of real property owned by Warren on July 7, 2008. On the sales day, Warren went to the sheriff's office and tendered the amount due ($5,343.82) under the original judgment, not the amount then due in light of the accumulated interest and other fees ($7,693.31).[1] On July 18, the Master issued a deed to respondent, who bought all of Warren's properties, which were sold at the sale as a single lot for $2,500. This left a deficiency of $5,193.31.[2]

In October 2008, Warren filed a motion to set aside the default order under Rule 55(c) and/or Rule 60(b), and to set aside the foreclosure deed.

The Master denied all relief requested by Warren. He also denied Warren's request to reconsider his decision, and this appeal follows.

## *ISSUES*

1. Did the Master err in refusing to set aside the judgment sale because the selling price was grossly inadequate?

2. Did the Master err in refusing to set aside the sale because he sold the properties as a single lot?

---

1. Warren has been refunded the $5,343.82.

2. No deficiency judgment was requested.

*ANALYSIS*

### 1. *Inadequate sales price*

 Warren argues that the Master erred in refusing to set aside the judicial sale because the bid at the sale was grossly inadequate. The Master denied this request, finding the price was not so grossly inadequate as to require the sale be set aside. Warren contends this was error. We disagree.

The Master found that the tax assessment records submitted by Warren[3] reflecting a combined value of $263,121 for the 13 tracts were sufficient to establish that sum as the value of the properties sold. He concluded that comparing the selling price of only $2,500 to the $263,121 assessed value of the property established that on its face the sales price would shock the conscience because of its gross inadequacy. *See Poole v. Jefferson Standard Life Ins. Co.*, 174 S.C. 150, 177 S.E. 24 (1934). The Master went on to find that Warren also presented evidence that some of the properties are subject to mortgage liens totaling more than $88,000 and that all the lots are subject to a federal tax lien in excess of $12,000. The Master also found that all thirteen properties were pledged as collateral to secure bonds issued by Warren in the course of his bail bondsman business.[4] Finally, citing *In re Barr*, 170 B.R. 772 (Bankr.E.D.N.Y.1994) (a case applying *Poole* ), he held that ad valorem taxes could be considered as affecting value, although he did not do so in this case.

Since the properties sold remained encumbered by the mortgages ($88,000) and the tax liens ($12,000), the Master added $100,000 to the sales price for a total of $102,500.[5] The Master concluded that the newly calculated sales price of $102,500 represented about 39% of the assessed value of the properties, a figure which did not justify setting aside the sale.

---

3. The actual records were not submitted until the post-trial motion but Warren's affidavit attached to his original motion asserted this valuation.

4. There is no evidence in the record indicating what this amount is.

5. The propriety of this method of calculating value is not challenged on appeal.

Warren argues on appeal that the Master erred in not judging inadequacy by directly comparing the sales price to the properties' value, without considering mortgages or liens. He cites *Investors Savings Bank v. Phelps*, 303 S.C. 15, 397 S.E.2d 780 (Ct.App.1990), and *Wells Fargo Bank, N.A. v. Turner*, 378 S.C. 147, 662 S.E.2d 424 (2008), for the proposition that a property's value should not be discounted by a mortgage. Under the circumstances of this case, we disagree.

In *Phelps*, the mortgagee bid $500 at the foreclosure sale of its mortgage. On the thirtieth day after the sale, a stranger to the mortgage entered an upset bid of $510. *See* S.C.Code Ann. § 15–39–720 (2005). The mortgagee then moved to set aside the stranger's bid as grossly inadequate, the Master agreed, and the Court of Appeals affirmed. The *Phelps* court held that the mortgage amount was competent evidence of the property's value, compared it to the upset bid price of $510, and concluded that a bid of approximately 1.5% of the property's value was unconscionable. *See also Wells Fargo, supra* (mortgage value is evidence of property's value).

In both *Phelps* and *Wells Fargo* the judicial sale was to foreclose a mortgage rather than a sale in execution of a judgment. The effect of a mortgage foreclosure sale is to remove the mortgage encumbrance from the property, and therefore the amount of the mortgage is a fair gauge of the property's value in the hands of the buyer. In a judgment execution sale such as this, however, the buyer takes the property subject to the mortgage as well as other liens. *E.g., Norman v. Norman*, 26 S.C. 41, 11 S.E. 1096 (1886). The Master properly considered the amount of the mortgages and tax liens in determining the true value of the properties to the buyer at an execution sale.

Warren has not met his burden of showing an abuse of discretion in the Master's finding that respondent's bid is not so grossly inadequate as to shock the conscience. *E.g., Pinckney v. Warren*, 344 S.C. 382, 544 S.E.2d 620 (2001) (appellant in equity matter has burden of persuading appellate court of reversible error). This is especially so since the Master's calculations did not account for the properties' taxes due [6] or

---

6. Warren's evidence showed delinquent taxes of $6,372.33 for 2007.

for the fact the properties were all pledged as collateral for Warren's bail bonds. Warren failed to demonstrate gross inadequacy in the sales price as the record is devoid of evidence of the true value of the properties. *Pinckney, supra.*

### 2. *Master's error*

██ Warren contends that even if we agree the sales price is not grossly inadequate, the Master erred in not setting aside the sale based on his decision to sell the thirteen properties as a single lot rather than individually. We disagree.

Warren concedes, as he must, that the Master had the authority to sell the properties as a single lot. The order referring the matter to the Master authorized him to "sell the properties (i) in bulk or (ii) in parcels, or (iii) in lots in such a sequence as he shall determine until such time as the net proceeds realized from such sale(s) shall equal the gross amount due [respondent], including accrued interest, expense of sale, and commissions." The Master found he did not abuse his discretion since a bulk sale was specifically permitted and since respondent, who attended the sale, requested that he sell the properties in bulk. We agree.

██ At oral argument, Warren contended the Master should have conducted a title search, discovered what liens attached to which parcel, determined the "true value" of each property, and then devised an order of sale that would satisfy the debt. We know of no authority which either requires or permits the Master to do this research and calculation. The individual conducting the judicial sale is not acting in a judicial capacity but rather "in a ministerial capacity as the arm of the court to carry out its orders. . . ." *Ex parte Keller,* 185 S.C. 283, 194 S.E. 15 (1937). While the Master was authorized to sell only so many of the lots as were necessary to satisfy the debt, it was not his obligation to research and calculate the value of each individual property. *Compare* Rule 71(a), SCRCP ("Any party who has appeared in the [foreclosure] action may present proof that the debt may be satisfied by selling property in parcels, rather than selling the whole to satisfy the claims.")

We can find no abuse of discretion in the Master's decision to sell the properties as a lot. Warren had defaulted, and at the time the sale was held the Master had before him no evidence of the value of any single tract, much less their collective value. Even at this juncture, the true value of the properties even after deducting mortgages and tax liens is unclear, as it appears they remain encumbered as collateral for Warren's bonds and that they are subject to tax delinquencies. Warren has not met his burden of demonstrating reversible error. *Pinckney, supra.*

## CONCLUSION

The Master's order is

**AFFIRMED.**

TOAL, C.J., concurs. KITTREDGE, J., concurring in result only. BEATTY, J., dissenting in a separate opinion in which HEARN, J., concurs.

Justice BEATTY:

I dissent. I would find that the Master–in–Equity abused his discretion and reverse his decision not to set aside the judgment sale. The Master's decision to sell thirteen separate parcels as a single lot was based on an error of law. The Master sold these thirteen separate parcels in one lot because he erroneously believed that he had no choice but to grant the request of the judgment creditor to sell the properties as one lot. This decision clearly ignores the tenets of Rule 71(b) and the order of reference. Both Rule 71(b) and the order of reference authorize the sale of the property or *parts* thereof as *required to satisfy the claims* [Rule 71(b)], or *until* such time as the net proceeds realized from the sale(s) shall *equal* the gross amount due plaintiff [order of reference]. Certainly, the sale of thirteen separate parcels valued in excess of $260,000 as a single lot was not required to satisfy a $7,693 judgment.

The Master's machinations with the value of each lot and the sale price are unpersuasive. Rule 71(b) and the order of reference grant the Master discretion in how to proceed with the sale but, at the same time, limit the amount of the

judgment debtor's property that can be sold. To sell more than is required to do equity violates the rule, the order of reference, and principles of equity.

Moreover, there is no evidence in this record that indicates the Master exercised his discretion. In fact, the only evidence is that the Master mistakenly believed he had no discretion. The failure to exercise discretion is an abuse of discretion. *See Balloon Plantation, Inc. v. Head Balloons, Inc.,* 303 S.C. 152, 155, 399 S.E.2d 439, 441 (1990) ("It is an equal abuse of discretion to refuse to exercise discretionary authority when it is warranted as it is to exercise the discretion improperly." (quoting *State v. Smith,* 276 S.C. 494, 498, 280 S.E.2d 200, 202 (1981))); *CEL Prods., LLC v. Rozelle,* 357 S.C. 125, 130, 591 S.E.2d 643, 645 (Ct.App.2004) ("When a trial judge is vested with discretion but his ruling reveals no discretion was in fact exercised, an error of law has occurred."); *Samples v. Mitchell,* 329 S.C. 105, 112, 495 S.E.2d 213, 216 (Ct.App.1997) ("A failure to exercise discretion amounts to an abuse of that discretion.").

HEARN, J., concurs.