THOMAS, J.:
**223 Appellants Devery A. Hale and Tina T. Hale filed this appeal following the denial of their motion to set aside a foreclosure sale. Appellants claim the successful bid at the foreclosure sale shocked the conscience and violated equitable principles. We affirm.
FACTS/PROCEDURAL HISTORY
In February 2014, Respondent Winrose Homeowners' Association, Inc. (Winrose) filed a foreclosure action alleging Appellants failed to pay their association dues. In July 2014, the master filed a judgment of foreclosure ordering the property sold to satisfy the debt. The judgment of foreclosure stated the sale "shall be subject to ... senior encumbrances" and specifically subject to a senior mortgage but did not disclose the outstanding balance of the mortgage. Regime Solutions, LLC (Regime) was the successful bidder at the foreclosure sale, which took place in August 2014. Regime's successful bid was for $3,036.
In November 2014, Appellants filed a motion to vacate the foreclosure sale. Appellants claimed the property's fair market value as of October 31, 2014, was $128,000 and the mortgage balance for the property was $66,004. During the hearing on Appellants'
*896 motion to vacate, Appellants claimed the master should compare Regime's successful bid of $3,036 to the amount of equity Appellants had in the property, which they calculated to be $61,996. Comparing the successful bid to their equity, Appellants concluded the bid was for less than 10% of the fair market value and, thus, shocked the conscience. Appellants also asserted the master had "the ability in [his] gavel to do equity where perhaps equity should be done." Appellants went on to contend they were "hard working people" and "deserve[d]" the property. Appellants failed, however, to argue any irregularities with the foreclosure sale process. They failed to participate in any of the proceedings until filing the motion to set aside the sale despite admittedly **224 receiving notices of the proceedings. They simply "put the papers in a drawer and forgot about them."
In response, Respondents argued the outstanding mortgage balance must be added to the successful bid to calculate an effective bid price for consideration under the "shocks-the-conscience" standard. Regime concurred with Appellants' assertion the property's fair market value was $128,000. The master issued his ruling in April 2015. The master noted Regime purchased the property subject to the mortgage balance of $66,004. The master agreed with Respondents that the appropriate calculation was to combine the successful bid amount with the mortgage balance to create an "effective sale price." Under this calculation, the master concluded Regime effectively bid $69,040 for the property, which constituted 54% of the fair market value. The master determined a bid of 54% of the fair market value did not shock the conscience, and he denied Appellants' motion to vacate the foreclosure sale. The master further explained "the practice of homeowners' association foreclosures would effectively be eradicated if [Appellants]' position came to bear." This appeal followed.
ISSUES ON APPEAL
1. Whether the master erred by denying Appellants' motion to vacate the foreclosure sale because the successful bid shocked the conscience.
2. Whether the master erred by denying Appellants' motion to vacate the foreclosure sale because equitable circumstances of the foreclosure demanded the sale be vacated.
STANDARD OF REVIEW
A foreclosure action is an equitable action. Wachovia Bank, Nat'l Ass'n v. Blackburn , 407 S.C. 321, 328, 755 S.E.2d 437, 440-41 (2014). Thus, our standard of review is de novo. Stoney v. Stoney , 421 S.C. 528, 530, 809 S.E.2d 59, 59 (2017); see S.C. Const. art. V, § 5 (stating in equity cases, the supreme court "shall review the findings of fact as well as the law, except in cases where the facts are settled by a jury and the verdict not set aside"). Under de novo review, we may consider two principles long recognized by our courts "(1) a trial [court] is in a superior position to assess witness credibility, and (2) an appellant has the burden of showing the **225 appellate court that the preponderance of the evidence is against the finding of the trial [court]." Stoney , 421 S.C. at 530, 809 S.E.2d at 59. De novo review allows us to take our own view of the evidence and make our own findings of fact. Id .
WHETHER THE SALE SHOCKED THE CONSCIENCE
Appellants argue the master erred by employing an improper calculation when deciding whether Regime's successful bid shocked the conscience. Appellants advocate for the Equity Method, which involves comparing the successful bid to the amount of equity in the property. The Equity Method consists of subtracting the amount of the senior encumbrance from the property's fair market value. The resulting number is the amount of equity in the property. The equity is then compared to the successful bid. According to Appellants, the successful bid must be greater than 10% of the equity or South Carolina courts should set aside the judicial sale because such a sale would shock the conscience. In this case, under the Equity Method, the successful bid was 4.89% of the equity. Appellants claim the Equity Method is proper because, although the property remained subject to the mortgage, Regime was not required to personally assume the mortgage.
Respondents argue the master correctly analyzed whether Regime's successful bid *897 shocked the conscience because senior mortgages must be included with the bid. Respondents note Regime must satisfy the mortgage in full to obtain clear title to the property. Finally, Respondents assert following Appellants' method of comparing the successful bid to the equity would create a chilling effect at foreclosure sales. Respondents claim potential bidders would be unable to determine the amount of equity in a property because there "are a host of statutes prohibiting" disclosure of a mortgagee's balance information. Respondents argue the Debt Method, which the master applied, is the proper method. The Debt Method consists of combining the amount of the successful bid with the amount of the senior encumbrance, which creates an effective bid price. The effective bid price is then compared to the fair market value. Respondents claim as long as the effective bid price is greater than 10% of the fair market value our courts should uphold the judicial sale. In this case, under the Debt **226 Method, the effective bid price was 53.94% of the fair market value. We agree with Respondents that the Debt Method is the proper method for considering a senior encumbrance.
This Court will not set aside a judicial sale "except for cogent reasons." E. Sav. Bank, FSB v. Sanders , 373 S.C. 349, 355, 644 S.E.2d 802, 805 (Ct. App. 2007). Our policy is to uphold judicial sales "when regularly made, and when it can be done without violating principle or doing injustice." Id . We "zealously insure judicial sales be openly and freely conducted and nothing be allowed to chill the bidding." Id . at 355, 644 S.E.2d at 805-06.
When "unfair means have not been employed to prevent competition at a judicial sale, mere inadequacy of price is no ground for setting the sale aside." Id . at 356, 644 S.E.2d at 806 (brackets removed). However, our courts have set aside judicial sales under certain circumstances. "A judicial sale will be set aside when either: (1) the sale price 'is so gross as to shock the conscience[;]' or (2) the sale 'is accompanied by other circumstances warranting the interference of the court.' " Bloody Point Prop. Owners Ass'n, Inc. v. Ashton , 410 S.C. 62, 70, 762 S.E.2d 729, 733 (Ct. App. 2014) (quoting Wells Fargo Bank, NA v. Turner , 378 S.C. 147, 150, 662 S.E.2d 424, 425 (Ct. App. 2008) ).
Determining whether a judicial sale shocks the conscience involves comparing the successful bid during the sale to the property's fair market value at the time of the foreclosure sale. Id . at 70, 762 S.E.2d at 734. Our courts have "not established a bright line rule for what percentage the sale value must be with respect to the [fair market] value in order to shock the conscience of the court." Id ."However, a search of South Carolina jurisprudence reveals only when judicial sales are for less than ten percent of a property's [fair market] value, have our courts consistently held the discrepancy to shock the conscience of the court." Id . (quoting Sanders , 373 S.C. at 359, 644 S.E.2d at 807 ).
We found no South Carolina case, and the parties point to none, expressly weighing the Equity and Debt Methods and declaring the preferred method when accounting for a senior encumbrance. However, in Arrow Bonding , our supreme court **227 considered whether to set aside a judicial sale based on the shock the conscience standard when a senior encumbrance remained on the property. Arrow Bonding Co. v. Warren , 399 S.C. 603, 606-08, 732 S.E.2d 622, 623-24 (2012).[1] The successful bid during the judicial sale was $2,500, and the property had senior encumbrances totaling $100,000. Id . at 605-06, 732 S.E.2d at 623-24. The master utilized the Debt Method and determined the effective bid price was $102,500. Id . at 606, 732 S.E.2d at 624. The master then determined the effective bid price constituted 39% of the fair market value and upheld the judicial sale. Id . Our supreme court explained the distinction between a judicial sale to foreclose a mortgage, which leaves the property unencumbered, and a different type of judicial sale, which may leave the property still encumbered after the sale. Id . at 607, 732 S.E.2d at 624. The court noted the master "properly considered the amount of the [senior encumbrances *898 ] in determining the true value of the properties to the buyer" at a judicial sale. Id . However, the court expressly noted the parties had not questioned the propriety of using the Debt Method calculation. Id . at 606 n.5, 732 S.E.2d at 624 n.5. The court ultimately found the appellant failed to meet his burden of showing the master erred because he failed to provide sufficient evidence of the property's true fair market value. Id . at 607-08, 732 S.E.2d at 624. The take away from Arrow Bonding , as it relates to this case, is that we should consider the senior mortgage on this property when determining whether Regime's bid shocked the conscience. However, Arrow Bonding does not conclusively establish whether the Debt or Equity Method is the law in South Carolina. Id . at 606 n.5, 732 S.E.2d at 624 n.5.
Prior to Arrow Bonding , this Court considered a similar factual situation. In Brooks , the holder of a second mortgage foreclosed on a property, and the successful bid during the judicial sale was $875. Fed. Nat'l Mortgage Ass'n v. Brooks , 304 S.C. 506, 508, 405 S.E.2d 604, 605 (Ct. App. 1991) (per curiam). The property remained subject to a senior mortgage **228 with a balance of $24,720, and the special referee found the property's fair market value was $52,500. Id . at 508, 509 n.1, 405 S.E.2d at 605, 606 n.1. On appeal, the successful bidder argued for application of the Debt Method. Id . at 509, 405 S.E.2d at 605-06. However, without any discussion regarding the competing methods, this Court appeared to utilize the Equity Method and declared, "It cannot be gainsaid that the payment by [the successful bidder] of $875 for equity of over $27,000 was adequate, albeit, it [was] not so grossly inadequate as to shock the conscience of the court." Id . at 510, 405 S.E.2d at 606. Thus, the Brooks court appears to have applied the Equity Method for deciding whether the successful bid shocked the conscience. We also note the Brooks court found the successful bid of $875 for equity of over $27,000 did not shock the conscience even though the bid represented only 3.15% of the equity. Id . The Brooks court went on to invalidate the judicial sale based on other circumstances surrounding the sale. Id . at 511-12, 405 S.E.2d at 607.
In this case, we find the Debt Method is the more reasonable method for determining whether a successful bid shocks the conscience because the successful bidder is required to satisfy the senior encumbrance dollar for dollar prior to obtaining clear title to the property. Also, it is reasonable to assume any bidder at a foreclosure sale is aware of the existence of a senior encumbrance and adjusts their bid accordingly. See Cypress on Sunland Homeowners Ass'n v. Orlandini , 227 Ariz. 288, 257 P.3d 1168, 1181 n.8 (Ariz. Ct. App. 2011) (explaining the purchaser at a junior lien foreclosure sale must satisfy the senior lien to avoid foreclosure by the senior lienholder and "[t]herefore, the land becomes the primary fund for the senior debt, and the purchaser is presumed to have deducted the amount of the senior liens from the amount he bids for the land"). Because the successful bidder must satisfy the senior encumbrance dollar for dollar in order to obtain clear title, it is reasonable to give the successful bidder credit for satisfying the senior encumbrance as if satisfaction of the encumbrance were a part of the bid.
Further, application of the Debt Method is consistent with our general policy of upholding properly conducted judicial sales because the Debt Method will result in fewer set asides. See Sanders , 373 S.C. at 355, 644 S.E.2d at 805 (noting our **229 general policy of upholding judicial sales when there are no irregularities with the sale process). Moreover, to the extent Appellants argue the Equity Method is preferable because Regime is obtaining equity without having to assume personal liability for the senior encumbrance, we disagree. Regime cannot truly access the equity in the property without satisfying the senior encumbrance because any future sale of the property would be subject to the senior encumbrance. Moreover, there is no evidence in the record to dispute or contradict Regime's assertion to the master that it would satisfy the senior encumbrance once the foreclosure sale was finalized. Accordingly, we find the Debt Method is the proper method for taking into account a senior encumbrance when deciding whether a successful bid shocks the conscience.[2] Thus, we affirm *899 the master's application of the Debt Method.
Additionally, we agree with the master that Regime's bid did not shock the conscience under the Debt Method analysis. Combining the successful bid of $3,036 with the senior mortgage balance of $66,004 rendered an effective bid of $69,040. Comparing the effective bid with the fair market value of $128,000, the master correctly concluded the effective bid was approximately 54% of the property's fair market value. We believe the master properly determined an effective bid constituting 54% of the fair market value did not shock the conscience.
Next, we address a concern from the dissent. The dissent suggests applying the Debt Method could lead judicial sale buyers to purchase properties and rent them for income without ever satisfying the senior encumbrance. First, we believe this is a solution in search of a problem because Appellants presented no evidence or arguments to the master to suggest Regime, or any other entity, was engaging in this kind of scheme. Thus, it is unclear whether the dissent's concern has ever materialized. Second, we question whether such a scheme would be profitable considering the timelines involved with purchasing a property at a judicial sale, evicting the prior owner, and finding a tenant versus the senior **230 mortgage holder foreclosing the property and cutting off the flow of rental income. However, we acknowledge this is largely speculation because Appellants presented no evidence or arguments to the master regarding this hypothesis. Third, this concern is overestimated because the circumstances surrounding this type of sale are rare. Appellants willingly failed to participate in any proceedings until filing this motion to set aside the sale despite receiving notices of the proceedings and having the financial ability to timely satisfy the association dues or bid at the sale. See Eldridge v. Eldridge , 398 S.C. 113, 121, 728 S.E.2d 24, 28 (2012) ("Equity aids the vigilant, not those who slumber on their rights."). We believe it is rare for a homeowner to forego satisfying a "de minimis" junior encumbrance for several years, despite having the ability to pay, while continuing to pay the monthly mortgage payment. Finally, with regard to the idea that the law should redress the alleged injustice that may result from judicial sale buyers employing this rental scheme, we believe the legislature is better suited to address the concern.[3]
Finally, to the extent Appellants argue the master should have set aside the sale because other circumstances warranted the court's interference, the argument is unpreserved. See Bloody Point , 410 S.C. at 70, 762 S.E.2d at 733 (noting the court may set aside a judicial sale if the sale "is accompanied by other circumstances warranting the interference of the court"). The master's order included a ruling only on whether to apply the Debt or Equity Method and whether the resulting percentage shocked the conscience. The master never ruled on whether other circumstances warranted the court's interference, **231 and Appellants did not file a Rule 59(e) motion to alter or amend. As a result, this argument is unpreserved. See Wilder Corp. v. Wilke , 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review."). Thus, we affirm the master's ruling that Regime's bid did not shock the conscience.
WHETHER EQUITY DEMANDED THE MASTER SET ASIDE THE SALE
Appellants argue the master erred by failing to weigh the equitable maxims and principles that were essential to ruling on *900 their motion to vacate the foreclosure sale. Specifically, Appellants assert they made an equitable argument during the hearing but "there [was] no record of an equitable consideration by the [master] or mention of the principles that the court considered in the [o]rder." Appellants further claim "there is no evidence" the master considered their equitable argument.
We find Appellants' arguments regarding equitable maxims unpreserved because they did not properly raise them to the master and the master did not rule on them. "It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review." Id . Appellants failed to properly raise their equitable arguments to the master. During the hearing, Appellants asserted the master had "the ability in [his] gavel to do equity where perhaps equity should be done." Appellants failed to state any specific equitable maxims during the hearing. Appellants merely contended they were "hard working people" and "deserve[d]" the property. Appellants' arguments during the hearing were insufficient to properly raise the equitable arguments they now raise on appeal.
Additionally, the master failed to rule on any equitable argument in his order. The order addressed only whether the master should set aside the sale due to Regime's bid shocking the conscience. The master did not rule on any equitable argument. Indeed, Appellants admit as much in their brief by arguing "there is no evidence" the master considered their **232 equitable argument. Based on Appellants' failure to properly raise their equitable arguments and the master's failure to rule on them, we find Appellants' equitable arguments unpreserved.
CONCLUSION
Based on the foregoing, we affirm the master's ruling that the Debt Method is the proper method to account for a senior encumbrance and that Regime's bid did not shock the conscience. Finally, Appellants' equitable arguments are unpreserved.
AFFIRMED.
HUFF, J., concurs.

The primary opinion in Arrow Bonding was a plurality opinion with two justices concurring, one justice concurring in result only, and two justices dissenting. 399 S.C. at 609, 732 S.E.2d at 625. The dissent was based not on the Debt or Equity Method but on an unrelated point of law. Id . at 609-10, 732 S.E.2d at 625.

We are not bound by Brooks 's application of the Equity Method because the issue of the competing methods was not before the Brooks court and, as noted by the dissent, was dicta.

Whether we apply the Debt or Equity Method under these circumstances, the underlying issue of judicial sales taking place to satisfy junior encumbrances while leaving the property burdened by senior encumbrances will continue. The legislature may wish to consider remedying this issue by treating judicial sales to satisfy junior encumbrances similarly to tax sales, which extinguish mortgages and other liens provided the lienholders receive notice prior to the sale. See Fed. Fin. Co. v. Hartley , 380 S.C. 65, 70, 668 S.E.2d 410, 413 (2008) (recognizing a tax sale extinguishes a mortgage on real property); S.C. Code Ann. § 12-49-1180(A) (2014) (explaining the rights of a mortgagee, as long as the mortgagee complies with certain conditions, "are not affected by a tax sale and a deed of conveyance, unless" the tax collector provides the mortgagee with notice pursuant to section 12-49-1120 of the South Carolina Code (2014) ).